**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MANAGED PHARMACY CARE, a California corporation; INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, INC., a California corporation; CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California corporation; GERALD SHAPIRO, PHARM D, DBA Upton Pharmacy and Gift Shoppe; SHARON STEEN, DBA Central Pharmacy; TRAN PHARMACY, INC., a California corporation, DBA Tran Pharmacy; ODETTE LEONELLI, DBA Kovacs-Frey Pharmacy; MARKET PHARMACY, INC., DBA Market Pharmacy; MARK BECKWITH, *Plaintiffs-Appellees*, <br><br> v. <br><br> KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, *Defendant*, <br><br> and <br><br> TOBY DOUGLAS, Director of the Department of Health Care Services of the State of California, *Defendant-Appellant*. | No. 12-55067 <br><br> D.C. No. 2:11-cv-09211-CAS-MAN |

CALIFORNIA HOSPITAL
ASSOCIATION,
                    *Plaintiff-Appellee*,

                    v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
                    *Defendant-Appellant*,

                    and

KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
                    *Defendant*.

No. 12-55068

D.C. No.
2:11-cv-09078-
CAS-MAN

CALIFORNIA MEDICAL
TRANSPORTATION ASSOCIATION,
INC., a California corporation; GMD
TRANSPORTATION, INC., a California
corporation; LONNY SLOCUM, an
individual,
                    *Plaintiffs-Appellees*,


                    v.


TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
                    *Defendant-Appellant*,


                    and


KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
                    *Defendant*.

No. 12-55103

D.C. No.
2:11-cv-09830-
CAS-MAN

CALIFORNIA MEDICAL
ASSOCIATION; CALIFORNIA DENTAL
ASSOCIATION; CALIFORNIA
PHARMACISTS ASSOCIATION;
NATIONAL ASSOCIATION OF CHAIN
DRUG STORES; CALIFORNIA
ASSOCIATION OF MEDICAL PRODUCT
SUPPLIERS; AIDS HEALTHCARE
FOUNDATION; AMERICAN MEDICAL
RESPONSE WEST; JENNIFER ARNOLD,
        *Plaintiffs-Appellees*,

v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
        *Defendant-Appellant*,

and

KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
        *Defendant*.

No. 12-55315

D.C. No.
2:11-cv-09688-
CAS-MAN

CALIFORNIA HOSPITAL
ASSOCIATION,
                    *Plaintiff-Appellee*,

            v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
                    *Defendant*,

            and

KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
                    *Defendant-Appellant*.

No. 12-55331

D.C. No.
2:11-cv-09078-
CAS-MAN

MANAGED PHARMACY CARE, a
California corporation;
INDEPENDENT LIVING CENTER OF
SOUTHERN CALIFORNIA, INC., a
California corporation; CALIFORNIA
FOUNDATION FOR INDEPENDENT
LIVING CENTERS, a California
corporation; GERALD SHAPIRO,
PHARM D, DBA Upton Pharmacy
and Gift Shoppe; SHARON STEEN,
DBA Central Pharmacy; TRAN
PHARMACY, INC., a California
corporation, DBA Tran Pharmacy;
ODETTE LEONELLI, DBA Kovacs-
Frey Pharmacy; MARKET
PHARMACY, INC., DBA Market
Pharmacy; MARK BECKWITH,
              *Plaintiffs-Appellees*,

                  v.

KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
              *Defendant-Appellant*,

                 and

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
              *Defendant*.

No. 12-55332

D.C. No.
2:11-cv-09211-
CAS-MAN

CALIFORNIA MEDICAL
TRANSPORTATION ASSOCIATION,
INC., a California corporation; GMD
TRANSPORTATION, INC., a California
corporation; LONNY SLOCUM, an
individual,
             *Plaintiffs-Appellees*,


                    v.


TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California,
                    *Defendant*,


            and


KATHLEEN SEBELIUS, Secretary of
the United States Department of
Health and Human Services,
             *Defendant-Appellant*.

No. 12-55334

D.C. No.
2:11-cv-09830-
CAS-MAN

CALIFORNIA MEDICAL ASSOCIATION; CALIFORNIA DENTAL ASSOCIATION; CALIFORNIA PHARMACISTS ASSOCIATION; NATIONAL ASSOCIATION OF CHAIN DRUG STORES; CALIFORNIA ASSOCIATION OF MEDICAL PRODUCT SUPPLIERS; AIDS HEALTHCARE FOUNDATION; AMERICAN MEDICAL RESPONSE WEST; JENNIFER ARNOLD,
*Plaintiffs-Appellees*,

v.

TOBY DOUGLAS, Director of the Department of Health Care Services of the State of California,
*Defendant*,

and

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services,
*Defendant-Appellant*.

No. 12-55335

D.C. No.
2:11-cv-09688-CAS-MAN

CALIFORNIA HOSPITAL
ASSOCIATION; G. G., an individual;
I. F., an individual; R. E., an
individual; A. W., an individual;
A. G., an individual,
*Plaintiffs-Appellants*,

v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California; KATHLEEN
SEBELIUS, Secretary of the United
States Department of Health and
Human Services,
*Defendants-Appellees*.

No. 12-55535

D.C. No.
2:11-cv-09078-
CAS-MAN

CALIFORNIA MEDICAL
ASSOCIATION; CALIFORNIA DENTAL
ASSOCIATION; CALIFORNIA
PHARMACISTS ASSOCIATION;
NATIONAL ASSOCIATION OF CHAIN
DRUG STORES; CALIFORNIA
ASSOCIATION OF MEDICAL PRODUCT
SUPPLIERS; AIDS HEALTHCARE
FOUNDATION; AMERICAN MEDICAL
RESPONSE WEST; JENNIFER ARNOLD,
*Plaintiffs-Appellants*,

v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California; KATHLEEN
SEBELIUS, Secretary of the United
States Department of Health and
Human Services,
*Defendants-Appellees*.

No. 12-55550

D.C. No.
2:11-cv-09688-
CAS-MAN

CALIFORNIA MEDICAL
TRANSPORTATION ASSOCIATION,
INC., a California corporation;
LONNY SLOCUM, an individual;
GMD TRANSPORTATION, INC., a
California corporation,
                *Plaintiffs-Appellants*,

v.

TOBY DOUGLAS, Director of the
Department of Health Care Services
of the State of California; KATHLEEN
SEBELIUS, Secretary of the United
States Department of Health and
Human Services,
                *Defendants-Appellees*.

No. 12-55554

D.C. No.
2:11-cv-09830-
CAS-MAN

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
October 10, 2012—Pasadena, California

Filed May 24, 2013

Before: Stephen S. Trott, Andrew J. Kleinfeld,
and M. Margaret McKeown, Circuit Judges.

Order;
Opinion by Judge Trott

SUMMARY[*]

## Medicaid / Preliminary Injunctions

The panel withdrew its prior opinion and published a superseding opinion reversing the district court's decisions in four cases and vacating preliminary injunctions prohibiting the California Department of Health Care Services and its Director from implementing Medi-Cal reimbursement rate reductions authorized by the California legislature and approved by the Secretary of the Department of Health and Human Services.

Asserting claims against the Secretary under the Administrative Procedures Act and against the Director under the Supremacy Clause, various Medi-Cal providers and beneficiaries claimed that the reimbursement rate reductions did not comply with 42 U.S.C. § 1396a(a)(30)(A). They relied on *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491 (9th Cir. 1997), which interpreted § 30(A) as requiring a state seeking to reduce Medicaid reimbursement rates first to consider the costs of providing medical services subject to the rate reductions.

The panel held that *Orthopaedic Hosp.* did not control because it did not consider the Secretary's interpretation of § 30(A). Agreeing with the D.C. Circuit, the panel held that the Secretary's approval of California's requested reimbursement rates, including her permissible view that prior to reducing rates states need not follow any specific

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

procedural steps, was entitled to *Chevron* deference, and that the Secretary's approval complied with the Administrative Procedures Act. The panel further held that the plaintiffs were unlikely to succeed on the merits of their Supremacy Clause claims against the Director because, even assuming that the Supremacy Clause provides a private right of action, the Secretary had reasonably determined that the State's reimbursement rates complied with § 30(A). Finally, the panel held that none of the plaintiffs had a viable takings claim because Medicaid, as a voluntary program, does not create property rights.

The panel dismissed cross-appeals as moot.

**COUNSEL**

Lindsey Powell, United States Attorneys' Office, Washington, D.C., for Defendant-Appellant Kathleen Sebelius.

Kamala D. Harris, California Attorney General; Julie Weng-Gutierrez, Senior Assistant Attorney General; Karin S. Schwartz (argued), Susan M. Carson, and Jennifer M. Kim, Supervising Deputy Attorneys General; Gregory D. Brown, Joshua N. Sondheimer, and Jonathan E. Rich, Deputy Attorneys General, San Francisco, California, for Defendant-Appellant Toby Douglas.

Lynn S. Carman, Medicaid Defense Fund, San Anselmo, California; Lloyd A. Bookman and Jordan B. Keville, Hooper, Lundy & Bookman, P.C., Los Angeles, California; Stanley L. Friedman, Law Offices of Stanley L. Friedman, Los Angeles, California; Craig J. Cannizzo, Hooper, Lundy

& Bookman, P.C., San Francisco, California; for Plaintiffs-Appellees-Cross-Appellants.

Jessica Lynn Ellsworth, Hogan Lovells US LLP, Washington, D.C., for amicus curiae.

**ORDER**

The Opinion filed December 13, 2012, and appearing at 705 F.3d 934 (9th Cir. 2012) is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. A superseding opinion will be filed concurrently with this order.

The panel as constituted above has voted to deny the petitions for rehearing. Judge McKeown has voted to deny the petitions for rehearing en banc and Judges Trott and Kleinfeld so recommend.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it. Fed. R. App. P. 35(b).

The petitions for rehearing and the petitions for rehearing en banc are **DENIED**.

No future petitions for panel rehearing or rehearing en banc shall be entertained.

**OPINION**

TROTT, Circuit Judge:

In the four cases giving rise to these eleven consolidated appeals, Kathleen Sebelius, Secretary of the Department of Health and Human Services ("HHS"), and Toby Douglas, Director of the California Department of Health Care Services ("DHCS"), appeal the district court's grant of preliminary injunctions in favor of various providers and beneficiaries of Medi-Cal, California's Medicaid program ("Plaintiffs"). The injunctions prohibit the Director and DHCS from implementing reimbursement rate reductions authorized by the California legislature and approved by the Secretary. The injunctions also stay the Secretary's approval. Plaintiffs cross-appeal the court's modification of its orders to allow the rate reductions as to Medi-Cal services provided before the injunctions took effect.

Plaintiffs assert claims against the Secretary under the Administrative Procedures Act ("APA") and against the Director under the Supremacy Clause of the United States Constitution, claiming that the reimbursement rate reductions do not comply with 42 U.S.C. § 1396a(a)(30)(A) (hereafter "§ 30(A)"). In support of their claims, Plaintiffs rely primarily on our decision in *Orthopaedic Hospital v. Belshe*, 103 F.3d 1491 (9th Cir. 1997). In *Orthopaedic Hospital*, the federal government was not a party. As such, we did not address whether deference was owed to the Secretary's interpretation of the statute. Instead, we interpreted § 30(A) as requiring a state seeking to reduce Medicaid reimbursement rates first to consider the costs of providing medical services subject to the rate reductions. DHCS did not consider such studies in all of the Medicaid services subject to the rate reductions. The Secretary points out that Congress

expressly delegated to her the authority and responsibility to approve state Medicaid plans.  She argues that her approval of the rate reductions, including her view that § 30(A) does not necessarily require cost studies (or any other particular methodology), is entitled to deference, overrides *Orthopaedic Hospital*, and complies with the APA.

In addition to joining the Secretary's arguments, the Director contends that Plaintiffs cannot maintain a direct cause of action under the Supremacy Clause for violation of § 30(A).  Although we have previously discussed this issue in a case where the Secretary had not acted, *Independent Living Center of Southern California v. Shewry*, 543 F.3d 1050 (9th Cir. 2008), the Director argues that our holding in that case is not binding in a situation where, as here, the Secretary has already exercised her discretion to approve the rate reductions as consistent with federal law.

The district court held that Plaintiffs in all four cases were likely to succeed on the merits of their APA and Supremacy Clause claims, and that the Plaintiffs in one case were likely to succeed on their claim under the Takings Clause of the United States Constitution.  The court also concluded that Plaintiffs would suffer irreparable harm absent the injunctions and that the injunctions favored the public interest.  We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we conclude that the district court misapplied the applicable legal rules and thus did not appropriately exercise its discretion.

We hold that (1) *Orthopaedic Hospital* does not control the outcome in these cases because it did not consider the key issue here – the Secretary's interpretation of § 30(A), (2) the Secretary's approval of California's requested reimbursement rates – including her permissible view that prior to reducing rates states need not follow any specific procedural steps,

such as considering providers' costs – is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and (3) the Secretary's approval complies with the APA.  We further hold that Plaintiffs are unlikely to succeed on the merits of their Supremacy Clause claims against the Director because – assuming that the Supremacy Clause provides a private right of action even where the Secretary has acted – the Secretary has reasonably determined that the State's reimbursement rates comply with § 30(A).  Finally, we hold that none of the Plaintiffs has a viable takings claim because Medicaid, as a voluntary program, does not create property rights.  The district court's orders concluding that Plaintiffs are likely to succeed on their claims must be reversed, the preliminary injunctions vacated, and the cases remanded for further proceedings consistent with this opinion.  We dismiss Plaintiffs' cross-appeals as moot.

# I

## BACKGROUND

"Medicaid is a cooperative federal-state program through which the federal government reimburses states for certain medical expenses incurred on behalf of needy persons." *Alaska Dep't of Health and Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.* ("*Alaska DHSS*"), 424 F.3d 931, 934 (9th Cir. 2005).  States do not have to participate in Medicaid, but those that choose to do so "must comply both with statutory requirements imposed by the Medicaid Act and with regulations promulgated by the Secretary of [HHS]."  *Id.* at 935.  Every State's Medicaid plan must

> provide such methods and procedures relating
> to the utilization of, and the payment for, care

and services available under the plan . . . as
may be necessary to safeguard against
unnecessary utilization of such care and
services and *to assure that payments are
consistent with efficiency, economy, and
quality of care and are sufficient to enlist
enough providers* so that care and services are
available under the plan at least to the extent
that such care and services are available to the
general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A) (emphasis added).

Recognizing that availability and access to health care,
particularly for children, is of vital national importance,
Congress established in 2009 the Medicaid and CHIP
Payment and Access Commission ("MACPAC"). Children's
Health Insurance Program Reauthorization Act of 2009, Pub.
L. No. 111-3, § 506, 123 Stat. 8, 91 (codified at 42 U.S.C.
§ 1396(a)). MACPAC is charged with studying beneficiary
access to health care under the Medicaid and CHIP programs
and "mak[ing] recommendations to Congress, the Secretary,
and States concerning . . . access policies." 42 U.S.C.
§ 1396(b)(1)(B). MACPAC reviewed 30 years of research
and issued its first report to Congress in March 2011. *See*
MACPAC, March 2011 Report to the Congress on
Medicaid and CHIP, p. 126, *available at*
http://www.macpac.gov/reports. MACPAC came up with a
three-part framework for analyzing access in light of the
factors set forth in § 30(A) – MACPAC's analysis considers
(1) the needs of enrollees, (2) provider availability, and (3)
utilization of services. *Id.* at 127; *see also* 76 Fed. Reg.
26342, 26343 (May 6, 2011) (notice of proposed rule
interpreting and implementing § 30(A)).

Congress expressly delegated to the Secretary the responsibility and the authority to administer the Medicaid program and to review state Medicaid plans and plan amendments for compliance with federal law.  42 U.S.C. § 1396a(b) ("The Secretary shall approve any plan which fulfills" the statutory requirements).  The Secretary, in turn, delegated that responsibility and authority to the regional administrator for the Center for Medicare and Medicaid Services ("CMS").  42 C.F.R. § 430.15(b); *see also Alaska DHSS*, 424 F.3d at 935.  CMS must review and approve or reject any proposed amendment to a state Medicaid plan. Such an amendment is referred to as a State Plan Amendment ("SPA").

The State of California has tried on several occasions to reduce reimbursement rates to providers of certain Medi-Cal services through the SPA process.  The rates involved in these appeals were initiated by Assembly Bill 97, where the legislature stated,

> In order to minimize the need for drastically cutting enrollment standards or benefits during times of economic crisis, it is crucial to find areas within the program *where reimbursement levels are higher than required* under the standard provided in [§ 30(A)] and *can be reduced in accordance with federal law*.

Cal. Welf. & Inst. Code § 14105.192(a)(2) (emphasis added). The statute granted the Director the authority to identify where reimbursement rates could be reduced and instructed the Director *not* to implement any reductions unless and until the Director (1) determined that the reductions "will comply

with applicable federal Medicaid requirements" and (2) obtained federal approval.  *Id.* § 14105.192(m), (o)(1).

Pursuant to that authority, DHCS studied the potential impact of rate reductions on many Medi-Cal services, reviewing data collected and analyzed over several years in the process.  The Director concluded that reimbursement rates could be reduced consistently with federal law for pharmacy services; durable medical equipment; emergency and non-emergency medical transportation; certain physician, clinic, and dental services; and services provided by "distinct part nursing facilities" ("DP/NFs").  DP/NFs are skilled nursing facilities operated by hospitals as distinct parts within those hospitals.  Rates for most of these services were to be reduced ten percent from current rate levels, though some were to be reduced ten percent from rate levels as they existed in 2008 to 2009.

DHCS prepared two SPAs for submission to CMS. Federal officials were in frequent contact with the Director during this process.  SPA 11-010 requested approval of the rate reductions for DP/NF services; SPA 11-009 requested approval of the rate reductions for all of the other services at issue.

In support of SPAs 11-009 and 11-010, DHCS submitted access studies for each of the affected services.  These studies reviewed data focused primarily on enrollee needs, provider availability, and utilization of services – the same factors MACPAC uses in its access analyses.  Although DHCS included studies of providers' costs with respect to some of the services, such as certain pharmacy costs and costs incurred by DP/NFs, it did not review cost data with respect to most of the services subject to the rate reduction.  The

studies concluded that SPAs 11-009 and 11-010 are unlikely to diminish access.

DHCS also submitted an 82-page monitoring plan, which identified 23 different measures DHCS will study on a recurring basis to ensure the SPAs do not negatively affect beneficiary access.    These measures address the three categories of factors MACPAC identified as affecting access: beneficiary data, provider availability data, and service utilization data.  Included among the data DHCS will monitor are changes in Medi-Cal and dental enrollment, primary care supply ratios, provider participation rates, bed vacancy rates, visits to emergency rooms, and preventable hospitalization rates.

Various providers and provider groups, including some of the Plaintiffs, offered extensive input to CMS as well.  For example, the California Hospital Association ("CHA") wrote to the agency multiple times to express its disapproval of the SPAs.  CMS considered a special report commissioned by CHA; the report concluded most DP/NFs operate at a loss. CHA and the California Medical Association ("CMA") submitted a survey purporting to show that the reductions would inhibit access.  As CMS later noted, there were several shortcomings with this survey, including that it was conducted over nine days and involved only 763 California residents.

CMS approved both SPAs.  The approval letters were succinct, but they explained that, "[i]n light of the data CMS reviewed, the monitoring plan, and [CMS's] consideration of stakeholder input," DHCS had submitted sufficient information to show that its SPAs complied with § 30(A). "As part of the analysis of this amendment, the State was able to provide metrics which adequately demonstrated

beneficiary access," including (1) the "[t]otal number of providers by type and geographic location and participating Medi-Cal providers by type and geographic area," (2) the "[t]otal number of Medi-Cal beneficiaries by eligibility type," (3) "[u]tilization of services by eligibility type over time," and (4) an "[a]nalysis of benchmark service utilization where available." CMS approved the reduced rates retroactively to June 1, 2011.

Four groups of Plaintiffs filed suit against the Secretary and the Director in the United States District Court for the Central District of California. *Managed Pharmacy Care v. Sebelius*, D. Ct. No. 2:11-cv-09211-CAS-MAN (Appeal Nos. 12-55067 & 12-55332) ("the *MPC* case"), was filed by five pharmacies, a pharmacy organization, an independent living center, a state association of independent living centers, and a Medi-Cal beneficiary. *California Medical Association v. Douglas*, D. Ct. No. 2:11-cv-09688-CAS-MAN (Appeal Nos. 12-55335, 12-55315, & 12-55550) ("the *CMA* case"), was filed by professional associations representing the interests of physicians, dentists, pharmacists, suppliers of durable medical equipment, providers of care for AIDS patients, providers of emergency medical transportation, and a Medi-Cal beneficiary. *California Medical Transportation Association v. Douglas*, D. Ct. No. 2:11-cv-09830-CAS-MAN (Appeal Nos. 12-55334, 12-55103, & 12-55554) ("the *CMTA* case"), was filed by a provider of non-emergency medical transportation services, a trade association representing other such providers, and a Medi-Cal beneficiary. *California Hospital Association v. Douglas*, D. Ct. No. 2:11-cv-09078-CAS-MAN (Appeal Nos. 12-55331, 12-55068, & 12-55535) ("the *CHA* case"), was filed by five Medi-Cal beneficiaries and a trade association representing the interests of DP/NFs.

The district court declined to defer to the Secretary's approval of the SPAs and granted Plaintiffs' motions for preliminary injunctions.  The court determined that our decision in *Orthopaedic Hospital* required the State to consider cost data prior to submitting the SPAs to CMS and disagreed with DHCS's research methodology with respect to the potential impact of the reductions on beneficiary access. For example, the district court determined that the State's participating pharmacy list incorrectly included some pharmacies, that the analysis of DP/NFs improperly considered freestanding nursing facilities, and that DHCS's geographic analysis was flawed because it focused on an urban-rural county model rather than one based on physical location.  The court determined also that CMS's acceptance of the monitoring plan was inappropriate because "at best the monitoring plan creates a potential response after a quality deficiency has been identified."  Thus, the district court held, Plaintiffs were likely to succeed on their APA claims that the SPAs violate § 30(A).  The court also held that the Supremacy Clause provides a private right of action to challenge the reimbursement rates as violating § 30(A) and that Plaintiffs were likely to prevail on those claims as well. In the *CHA* case, the district court entered the preliminary injunction on the additional ground that because state law places certain restrictions on how and when DP/NFs may stop treating Medicaid patients, CHA would likely succeed on its takings claim.

In the *MPC*, *CMTA*, and *CHA* cases, the injunctions initially prohibited the Director from applying the rate reductions to any services rendered after June 1, 2011.  In the *CMA* case, however, the court determined that enjoining the reductions as to services rendered before the injunctions took effect would violate the State's Eleventh Amendment sovereign immunity and limited its injunction accordingly.

On motions of the Director, the district court modified the other injunctions along the same lines.

The Secretary and the Director appeal. Plaintiffs cross-appeal the district court's decision to allow the new rates with respect to Medicaid services rendered before the effective date of the injunctions.

## II

### STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy" and is appropriate only when the party seeking the injunction "establish[es] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 20 (2008).

We review the district court's grant of a preliminary injunction for abuse of discretion. *Beno v. Shalala*, 30 F.3d 1057, 1063 (9th Cir. 1994). We must first determine whether the district court "identified and applied the correct legal rule to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). If not, that error of law necessarily constitutes an abuse of discretion. *Id.* at 1261. If, however, the district court identified and applied the correct legal rule, we will reverse only if the court's decision "resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.* at 1263.

In considering Plaintiffs' APA claims, we must follow "additional requirements for review." *Earth Island Inst. v.*

*Carlton*, 626 F.3d 462, 468 (9th Cir. 2010). Under the APA, we may not set aside agency action unless that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is met only where the party challenging the agency's decision meets a heavy burden of showing that "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## III

## APA CLAIMS AGAINST THE SECRETARY

### A

We first consider whether our decision in *Orthopaedic Hospital* is dispositive of the issues in these appeals.

In *Orthopaedic Hospital*, a hospital and hospital association challenged California's reduction of reimbursement rates for providers of hospital outpatient services, arguing that DHCS reduced the rates "without proper consideration of the effect of hospital costs" on the § 30(A) factors of efficiency, economy, quality of care, and beneficiary access. 103 F.3d at 1492. The State did not dispute that it had not considered providers' costs of offering Medicaid services, but argued that its reductions nonetheless complied with § 30(A) because the statute did not require it to study such costs.

HHS was not a party in *Orthopaedic Hospital*, and we did not have the benefit of the agency's position regarding the requirements of § 30(A).  We owed no deference to the State's position that § 30(A) does not require cost studies because "[a] state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes." *Id.* at 1495.  We thus had to determine "the proper interpretation" of the statute on our own. *Id.* at 1496.

We interpreted § 30(A) as requiring the State to consider providers' cost of services prior to setting reimbursement rates for those services:

> The statute provides that *payments* for services must be consistent with efficiency, economy, and quality of care, and that those *payments* must be sufficient to enlist enough providers to provide access to Medicaid recipients.  [DHCS] cannot know that it is setting rates that are consistent with efficiency, economy, quality of care and access without considering the costs of providing such services.  It stands to reason that the *payments* for hospital outpatient services must bear a reasonable relationship to the costs of providing quality care incurred by efficiently and economically operated hospitals.

*Id.*

Plaintiffs contend that a simple application of *Orthopaedic Hospital* decides these cases.  We disagree, for two reasons.

First, we recognized in *Orthopaedic Hospital* that our standard of review might have been different had the agency spoken on the issue. *Id.* at 1495 (noting "the deference

afforded a federal agency's interpretation of its own statutes" under *Chevron*).     This is because "*Chevron*'s policy underpinnings emphasize the expertise and familiarity of the federal agency with the subject matter of its mandate and the need for coherent and uniform construction of federal law nationwide." *Id.* (internal quotation marks omitted).  Because the agency was not a party to the litigation and had not yet set forth its position on the requirements of § 30(A), there was no issue of whether we should defer to the agency.    These appeals, however, present just that question.

Second, the Secretary has now set forth her interpretation, through her approvals of the SPAs, that § 30(A) does not prescribe any particular methodology a State must follow before its proposed rates may be approved.  CMS explicitly approved California's SPAs as consistent with the requirements of § 30(A) even though cost data was not available with respect to all of the services, thereby determining that the lack of cost studies did not preclude California from reducing Medi-Cal reimbursement rates.  "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."    *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.* ("*Brand X*"), 545 U.S. 967, 982 (2005); *Garfias-Rodriguez v. Holder*, No. 09-72603, ___ F.3d ___, slip op. 12583, 12599, 2012 WL 5077137, *7 (9th Cir. Oct. 19, 2012) (en banc) (concluding that, pursuant to *Brand X*, our prior construction of two provisions of the Immigration and Nationality Act did not survive a contrary reading by the Board of Immigration Appeals).  Although *Orthopaedic Hospital* was grounded in the language of the statute – as are all of our statutory interpretation cases – we did not hold that our view of

§ 30(A) represented the *only* reasonable interpretation of that statute. We read the statute in the absence of an authoritative agency construction and decided the case accordingly. And although we cited *Orthopaedic Hospital* with approval in *Alaska DHSS*, there was no *Brand X* issue to consider in that case. *See Alaska DHSS*, 424 F.3d at 940.

For these reasons, *Orthopaedic Hospital* does not automatically render the SPA approvals arbitrary and capricious.

## B

We now consider whether the Secretary's approval based on her view that § 30(A) does not impose a particular process on the States is entitled to *Chevron* deference. This familiar standard requires a court to abide by an agency's interpretation or implementation of a statute it administers if Congress has not directly spoken "to the precise question at issue" and if the agency's answer is "permissible" under the statute. *Chevron*, 467 U.S. at 842–43.

But not every administrative act is entitled to *Chevron* deference. *United States v. Mead Corp.*, 533 U.S. 218 (2001). In reviewing an "administrative implementation of a particular statutory provision," we defer to the agency's decision (1) "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law," and (2) "the agency interpretation claiming deference was promulgated in the exercise of that authority." *Id.* at 226–27.

Arguably, the Supreme Court has already concluded that SPA approvals meet the *Chevron/Mead* standard by stating that "[t]he Medicaid Act commits to the federal agency the

power to administer a federal program.  And here the agency has acted under this grant of authority [by approving a SPA]. That decision carries weight."  *Douglas v. Indep. Living Ctr. of S. Cal.*, ___ U.S. ___, 132 S. Ct. 1204, 1210 (2012). Because the *Douglas* Court also recognized that the deference question had not been fully argued, *id.* at 1211, we proceed with our own analysis.  We keep in mind, however, that we afford "considered dicta from the Supreme Court . . . a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold."  *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

The first prong of the *Mead* standard is easily satisfied in these cases:  "The Secretary shall approve any plan which fulfills the conditions specified" in the statute.  42 U.S.C. § 1396a(b).  Congress expressly delegated to the Secretary the authority to interpret § 30(A) and to determine whether a State's Medicaid program conforms to federal requirements.

The second *Mead* prong – whether the Secretary interpreted § 30(A) and approved California's SPAs within the exercise of her delegated authority – depends on the "form and context" of the approvals.  *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 826 (9th Cir. 2012) (en banc).  "Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent."  *Mead Corp.*, 533 U.S. at 227.

We have already considered the application of *Chevron* to the SPA process.  In *Alaska DHSS*, the Secretary *disapproved* a SPA, concluding that Alaska's proposal to raise reimbursement rates was inconsistent with § 30(A)'s

standards of efficiency and economy.  424 F.3d at 940.  In doing so, CMS exercised its authority, delegated by Congress, to review Medicaid plans.  Thus, we deferred to the agency's disapproval, holding that the statutory terms "efficiency" and "economy" left a "gap that [CMS] permissibly filled via case-by-case adjudication."  *Id.*

There does not appear to be any logical reason why Congress would delegate to the Secretary the discretion to decide that a proposed SPA *violates* § 30(A), but choose to withhold from her that same discretion if she decides the SPA *complies* with § 30(A).  The nature of her authority is the same in both instances.  Nonetheless, the district court distinguished *Alaska DHSS* because that case relied in part on "the formal administrative process afforded the State" in the case of a SPA disapproval.  *Alaska DHSS*, 424 F.3d at 939.

When the Secretary disapproves a proposed plan amendment, a State has the "opportunities to petition for reconsideration, brief its arguments, be heard at a formal hearing, receive reasoned decisions at multiple levels of review, and submit exceptions to those decisions."  *Id.*  In the case of an approval, however, the Medicaid program does not provide interested parties with similar opportunities (although they may certainly avail themselves of the formal process provided in a suit under the APA).  This difference, argue the Plaintiffs, shows that *Chevron* deference is not appropriate to CMS's SPA approvals.

It is true that *Alaska DHSS* relied on the formal petition process afforded the State in the case of a disapproval.  But that was not the only reason we deferred to the agency's decision.  Section 30(A)'s "undefined terms 'efficiency' and 'economy' leave a gap that [CMS] permissibly filled," and the agency appropriately "elucidate[d] the meaning of the

statute . . . via case-by-case adjudication." *Id.* at 940.  CMS did the same thing here.

Importantly, we recognized in *Alaska DHSS* that the formal process afforded the State was "clear *evidence* that Congress intended [the agency's] final determination to carry the force of law." *Id.* at 939 (emphasis added) (internal quotation marks and alteration omitted).  But formal process is not the only evidence of such congressional intent.  In the absence of formal procedures, courts must determine whether there are "any *other* circumstances reasonably suggesting" that Congress intended deference to an agency decision. *Mead Corp.*, 533 U.S. at 231 (emphasis added).  There are many such circumstances to consider.  For example, "the interstitial nature of the legal question, the related expertise of the [a]gency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the [a]gency has given the question over a long period of time" are all factors favoring *Chevron* deference.  *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

Considering all the evidence of *Chevron* delegation in these cases, we hold that the balance tips to the side of deference.  The language of § 30(A) is "broad and diffuse." *Sanchez v. Johnson*, 416 F.3d 1051, 1060 (9th Cir. 2005). The statute uses words like "consistent," "sufficient," "efficiency," and "economy," without describing any specific steps a State must take in order to meet those standards.  The statute's amorphous language "suggest[s] that the agency's expertise is relevant in determining its application." *Douglas*, 132 S. Ct. at 1210.

Medicaid administration is nothing if not complex. Determining a plan's compliance with § 30(A), as well as its

compliance with a host of other federal laws, is central to the program because a State cannot participate in Medicaid without a plan approved *by the Secretary* as consistent with those laws. The executive branch has been giving careful consideration to the ins and outs of the program since its inception, and the agency is the expert in all things Medicaid. And let us not forget that "a very good indicator of delegation meriting *Chevron* treatment [is an] express congressional authorization[] to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Mead Corp.*, 533 U.S. at 229. That express delegation is precisely what we have here. Therefore, despite the lack of formal procedures available for interested parties, the Secretary's exercise of discretion in the "form and context" of a SPA approval deserves *Chevron* deference. *Price*, 697 F.3d at 826.[1]

In holding that *Chevron* applies to SPA approvals, we reach a conclusion similar to that reached by the D.C. Circuit. In *Pharmaceutical Research and Manufacturers of America v. Thompson*, 362 F.3d 817, 819 (D.C. Cir. 2004), then-Secretary Thompson of HHS approved a Michigan SPA designed to implement "a low-cost state prescription drug coverage program [] for beneficiaries of Medicaid." The plaintiffs there, as here, argued that SPA approvals "are not

---

[1] In a letter submitted pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the CMA and CHA Plaintiffs rely on *Price* in support of their argument that *Chevron* does not apply to SPA approvals. But *Price* considered whether a statutory interpretation advanced by an agency *in litigation* was entitled to deference. Undertaking a *Chevron*/*Mead* analysis, we concluded that Congress did not intend the *litigating positions* of the Director of the Office of Workers' Compensation Programs to have the force of law. *Price*, 697 F.3d at 830–31. The Secretary's decision here is a very different animal.

the result of a formal administrative process" and are therefore "akin to 'interpretations contained in policy statements, agency manuals, and enforcement guidelines,' which are 'beyond the *Chevron* pale.'" *Id.* at 821 (quoting *Mead Corp.*, 533 U.S. at 234).

> The D.C. Circuit rejected this argument because it

>> overlooks the nature of the Secretary's authority. This is *not a case of implicit delegation of authority* through the grant of general implementation authority. In the case of the Medicaid payment statute, the *Congress expressly conferred on the Secretary authority to review and approve state Medicaid plans as a condition to disbursing federal Medicaid payments*. . . . In carrying out this duty, the Secretary is charged with ensuring that each state plan complies with a vast network of specific statutory requirements . . . . Through this "express delegation of specific interpretive authority," *Mead*, 533 U.S. at 229, 121 S. Ct. at 2172, the Congress manifested its intent that the Secretary's determinations, based on interpretation of the relevant statutory provisions, should have the force of law.

*Id.* at 821–22 (emphasis added). Therefore, the court deferred to the agency's approval of the Michigan SPA and also determined that the agency did not violate the APA. *Id.* at 825–27.

We agree with the D.C. Circuit's reasoning. *See Alaska DHSS*, 424 F.3d at 939 (citing *Pharm. Research Mfrs. of Am.*

with approval).   The Medicaid program is a colossal undertaking, jointly funded by the federal government and the States.  Congress explicitly granted the Secretary authority to determine whether a State's Medicaid plan complies with federal law.   The Secretary understands the Act and is especially cognizant of the all-important yet sometimes competing interests of efficiency, economy, quality of care, and beneficiary access.   It is well within the Secretary's mandate to interpret the statute via case-by-case SPA adjudication.

Because Congress intended SPA approvals to have the force of law, we now ask whether the Secretary's interpretation that § 30(A) requires a *result*, not a particular *methodology* such as cost studies, is based on a "permissible" reading of § 30(A).  *Chevron*, 467 U.S. at 843.  We have no doubt that it is.

The statute says nothing about cost studies.   It says nothing about any particular methodology.  *See Holder v. Martinez Gutierrez*, ___ U.S. ___, 132 S. Ct. 2011, 2017 (2012) (deferring to the Board of Immigration Appeals' reading of 8 U.S.C. § 1229b(a) because the statute "does not mention imputation [of a parent's years of residence to a child], much less require it").  Rather, by its terms § 30(A) requires a substantive result – reimbursement rates must be consistent with efficiency, economy, and quality care, and sufficient to enlist enough providers to ensure adequate beneficiary access.  Congress did not purport to instruct the Secretary *how* to accomplish these substantive goals.  That decision is left to the agency.

The idea that a State should consider providers' costs prior to reducing reimbursement rates seems at first blush to be logical.  As we stated in *Orthopaedic Hospital*, "costs are

an integral part of the consideration." 103 F.3d at 1496. But even then, we acknowledged that beneficiary access to Medicaid services "appears to be driven to a degree by factors independent of costs of the services." *Id.* at 1498. An agency's interpretation "prevails if it is a reasonable construction of the statute, whether or not it is the only possible interpretation or even the one a court might think best." *Martinez Gutierrez*, 132 S. Ct. at 2017. The position that costs might or might not be one appropriate measure by which to study beneficiary access, depending on the circumstances of each State's plan, is entirely reasonable. Each State participating in Medicaid has unique, local interests that come to bear. The Secretary must be free to consider, for each State, the most appropriate way for that State to demonstrate compliance with § 30(A).

Moreover, the term "cost" is not as free from ambiguity as the Plaintiffs would have us believe. When one shops at a retail outlet and sees a price on an item, the cost to the consumer is that price, period. But when one attempts to determine *how* the price or cost to the consumer has been calculated, a whole host of intangibles come into play, such as cost of goods, depreciation, profit, overhead, deferred compensation, advertising, etc. The term "cost" may also include items such as contract prices to suppliers and service providers, which may themselves be negotiated and reduced if reimbursement rates are reduced. Nowhere in this record have we been able to find a description by the Plaintiffs of a *useful* definition of costs; and that term is anything but a talisman solving all problems or providing answers to complicated questions.

We note that our sister circuits have agreed that § 30(A) "does not require any 'particular methodology' for satisfying its substantive requirements as to modifications of state

plans." *Rite-Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999); *Minn. Homecare Ass'n, Inc. v. Gomez*, 108 F.3d 917, 918 (8th Cr. 1997) (per curiam) ("The Medicaid Act . . . does not require the State to utilize any prescribed method of analyzing and considering said factors."); *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1030 (7th Cir. 1996) ("Nothing in the language of § 1396a(a)(30), or any implementing regulation, requires a state to conduct studies in advance of every modification.  It requires each state to produce a *result*, not to employ any particular methodology for getting there.").  Today, we join them.

We defer to the Secretary's decision that SPAs 11-009 and 11-010 comply with § 30(A).  The district court's failure to give *Chevron* deference is an error of law that necessarily constitutes an abuse of discretion. *Hinkson*, 585 F.3d at 1263.

## C

Our final inquiry with respect to Plaintiffs' APA claims is whether the agency's approvals were arbitrary and capricious.  Agency action is arbitrary and capricious when the agency relies on factors Congress has not intended it to consider, fails to consider an important aspect of the problem, or offers an explanation that runs counter to the evidence before the agency. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  We must uphold an agency action -- even if it is made with "less than ideal clarity" -- as long as "the agency's path may reasonably be discerned" from the record. *Id.* (internal quotation marks omitted).

Plaintiffs urge us to conclude that the SPA approvals are arbitrary and capricious because the agency "failed to independently assess the statutory factors" of efficiency,

economy, quality of care, and beneficiary access and, in fact, made "no reference" to these requirements when approving the SPAs. But that is not an accurate representation of the record.

CMS's approvals themselves refute Plaintiffs' argument, stating, "We conducted our review of your submittal *with particular attention to the statutory requirements at [§ (30)(A)]*." (emphasis added). CMS concluded that the SPA "complies with all applicable requirements." With respect to the access requirement of § 30(A), the approvals state that the lower rates are permissible because the State "provide[d] metrics which adequately demonstrated beneficiary access." DHCS's analysis considered (1) the "[t]otal number of providers by type and geographic location and participating Medi-Cal providers by type and geographic area," (2) the "[t]otal number of Medi-Cal beneficiaries by eligibility type," (3) "[u]tilization of services by eligibility type over time," and (4) an "[a]nalysis of benchmark service utilization where available." This approach tracks MACPAC's three-prong framework for analyzing access: (1) the needs of Medicaid beneficiaries, (2) the availability of providers, and (3) the utilization of services. *See* MACPAC March 2011 Report, p. 127.

The agency also appropriately considered the State's monitoring plan. The district court rejected the monitoring plan because it "merely creates a potential response after an access or quality deficiency has been identified." We do not agree that the State's 82-page comprehensive plan is irrelevant or superfluous. The statute cannot logically require that every single potential problem – no matter how unlikely – be predicted, identified, and resolved *before* SPA approval. DHCS's monitoring plan supports the reasonable conclusion that the rate reductions are not expected negatively to impact

beneficiary access, but that if such problems occur, the State can quickly respond and address them. It was not arbitrary or capricious for the agency to consider California's monitoring plan.

The district court delved into the minutiae of the Secretary's approval, picking apart DHCS's research and finding potential flaws – an inappropriate exercise when reviewing agency action under the APA. Hundreds of pages of analysis submitted by DHCS support the Secretary's conclusion that the SPAs comply with § 30(A) and are unlikely to affect beneficiary access in a detrimental way. Plaintiffs cite to other evidence that contradicts DHCS's evidence of sufficient beneficiary access. But CMS considered this "stakeholder input" when making its determinations, and the agency's decision to credit DCHS's evidence over that submitted by other parties was reasonable. "[W]here there is conflicting evidence in the record, the [agency's] determination is due deference – especially in areas of [its] expertise." *Nat'l Parks & Conserv. Ass'n v. U.S. Dep't of Transp.*, 222 F.3d 677, 682 (9th Cir. 2000).

The "Secretary shall approve" plans and plan amendments that comply with the requirements set forth in § 30(A). 42 U.S.C. § 1396a(b). *How* should the Secretary determine that compliance? Under the APA the answer must be, in any way that is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). CMS's decision that SPAs 11-009 and 11-010 meet the requirements of § 30(A) neither failed to consider an important aspect of the problem, nor relied on factors Congress did not intend it to consider. Because the agency's path can reasonably be discerned, Plaintiffs cannot succeed on their APA claims.

## IV

## SUPREMACY CLAUSE CLAIMS AGAINST THE DIRECTOR

Although § 30(A) does not create any substantive rights enforceable under 42 U.S.C. § 1983, *Sanchez*, 416 F.3d at 1060 (9th Cir. 2005), we held in *Independent Living Center of Southern California v. Shewry* ("*ILC I*") that "a plaintiff seeking injunctive relief under the Supremacy Clause on the basis of federal preemption need not assert a federally created 'right' . . . but need only satisfy traditional standing requirements." 543 F.3d 1050, 1058 (9th Cir. 2008). The Supreme Court denied certiorari. 129 S. Ct. 2828 (2009). We reaffirmed *ILC I*'s holding in a later appeal in the same case. *See Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly* ("*ILC II*"), 572 F.3d 644, 650 n.7 (9th Cir. 2009) (*vacated sub nom., Douglas*, 132 S. Ct. 1204).

The Supreme Court granted certiorari in *ILC II*, along with a number of other Ninth Circuit cases, to consider whether the Supremacy Clause grants a private cause of action for violation of § 30(A). The Secretary was not a party in any of the cases. At the time of the oral argument, the Secretary had not yet approved the reimbursement rates at issue, which had been authorized by California Assembly Bills 5 and 1183. Later, however, the Secretary *did* approve the new rates, concluding that they complied with § 30(A). After receiving supplemental briefing on the effect of the Secretary's action, the Supreme Court vacated those cases in *Douglas v. Independent Living Center of Southern California*, 132 S. Ct. at 1208.

All of the Justices agreed that the Secretary's approval of California's rate reductions "does not change the underlying

substantive question, namely whether California's statutes are consistent with [§30(A)]." *Id.* at 1210; *see also id.* at 1213–14 (Roberts, C.J., dissenting) ("[T]he CMS approvals have no impact on the question before this Court."). Justice Breyer's majority opinion concluded, however, that the approvals "may change the answer" and that in the new posture of the cases it was appropriate to remand for us to consider the Supremacy Clause issue in the first instance.

The cases vacated and remanded by *Douglas* are currently in mediation. The question we face in those cases is whether the Supremacy Clause allows a private party to enforce a federal statute that creates no substantive rights, even where the administrative agency charged with the implementation and enforcement of the statute has already acted. *Douglas* did not resolve that question, and we need not do so here.

Even assuming there were a cause of action under the Supremacy Clause where, as here, the Secretary has acted – a position we do not necessarily believe the Court would endorse – at this stage it is sufficient to say that Plaintiffs are unlikely to succeed on the merits on their Supremacy Clause claim against the Director for the very same reason they are unlikely to prevail on their APA claims against the Secretary. The Secretary has reasonably decided that SPAs 11-009 and 11-010 comply with federal law. That is the end of the matter for the purposes of this appeal of the injunction.

## V

## CHA'S TAKINGS CLAIM

The Takings Clause of the Constitution prohibits the government from taking private property for public use without just compensation. U.S. Const., amend. V. Because

participation in Medicaid is voluntary, however, providers do not have a property interest in a particular reimbursement rate. *See Erickson v. U.S. ex rel. HHS*, 67 F.3d 858, 862 (9th Cir. 1995) ("[P]laintiffs do not possess a property interest in continued participation in Medicare, Medicaid, or the federally-funded state health care programs."). Despite this well-established principle, the district court held that CHA was likely to succeed on its takings claim because, as a result of state laws restricting the expulsion of patients from skilled nursing facilities, "the hospitals' continued participation in Medi-Cal is compulsory at least until such time as alternate arrangements are made for patients receiving skilled nursing services." The district court was not persuaded by the fact that "the hospitals in this case accepted the restrictions to their services when they voluntarily elected to participate in Medi-Cal" because "they did so before the State enacted [Assembly Bill] 97."

But regardless of when providers decide to participate in Medi-Cal, they can hardly expect that reimbursement rates will never change. The fact that States may submit SPAs and request approval for lower rates is enough to end the inquiry. Neither the State nor the federal government "promised, explicitly or implicitly," that provider reimbursement rates would never change. *Cervoni v. Sec'y of Health, Educ. & Welfare*, 581 F.2d 1010, 1018 (1st Cir. 1978) (holding that a provider of Medicare does not have a property interest in continued payments under Part B); *see also Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121, 129–30 (1st Cir. 2009) (holding that there can be no unconstitutional taking where a provider "voluntarily participates in a regulated program"). CHA cannot succeed on its takings claim.

**V**

**CONCLUSION**

For the foregoing reasons, we reverse the district court's decisions and vacate the preliminary injunctions in all four cases. We remand for further proceedings consistent with this opinion.

**Appeal Nos. 12-55067, 12-55332, 12-55331, 12-55068, 12-55334, 12-55103, 12-55335, and 12-55315 are REVERSED, the INJUNCTIONS VACATED, and the cases REMANDED.**

**Appeal Nos. 12-55535, 12-55554, and 12-55550 are DISMISSED as MOOT.**