**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HOAG MEMORIAL HOSPITAL PRESBYTERIAN, a California corporation; KAWEAH DELTA HEALTH CARE DISTRICT, a California Local Health Care District; ANAHEIM MEMORIAL MEDICAL CENTER, a California corporation; LONG BEACH MEMORIAL MEDICAL CENTER, a California corporation; ORANGE COAST MEMORIAL MEDICAL CENTER, a California corporation; SADDLEBACK MEMORIAL MEDICAL CENTER, a California corporation; PIONEERS MEMORIAL HEALTHCARE DISTRICT, a California Local Health Care District; SALINAS VALLEY MEMORIAL HEALTHCARE SYSTEM, a California Local Health Care District; SAN ANTONIO COMMUNITY HOSPITAL, a California corporation; SIERRA VIEW LOCAL HEALTH CARE DISTRICT, a California Local Health Care District; SRM ALLIANCE HOSPITAL SERVICES, a California nonprofit corporation, DBA Petaluma Valley Hospital; MISSION HOSPITAL REGIONAL MEDICAL CENTER, a California nonprofit corporation; QUEEN OF THE VALLEY MEDICAL | No. 15-56547<br><br>D.C. No. 2:11-cv-10638-SVW-MAN<br><br>OPINION |

CENTER, a California nonprofit corporation; REDWOOD MEMORIAL HOSPITAL OF FORTUNA, a California nonprofit corporation; SANTA ROSA MEMORIAL HOSPITAL, a California nonprofit corporation; ST. JOSEPH HOSPITAL OF EUREKA, a California nonprofit corporation; ST. JOSEPH HOSPITAL OF ORANGE, a California nonprofit corporation; ST. JUDE HOSPITAL, a California nonprofit corporation; ST. MARY MEDICAL CENTER, a California nonprofit corporation; TAHOE FOREST HOSPITAL DISTRICT, a California Local Health Care District; TENET HEALTHSYSTEM DESERT INC., a California corporation; DOCTORS HOSPITAL OF MANTECA, INC., a California corporation; DOCTORS MEDICAL CENTER OF MODESTO, INC., a California corporation; FOUNTAIN VALLEY REGIONAL HOSPITAL AND MEDICAL CENTER, a California corporation; JFK MEMORIAL HOSPITAL, INC., a California corporation; SAN RAMON REGIONAL MEDICAL CENTER, INC., a California corporation; LAKEWOOD REGIONAL MEDICAL CENTER, INC., a California corporation; LOS ALAMITOS MEDICAL CENTER, INC., a California corporation; PLACENTIA-LINDA HOSPITAL, INC., a California corporation; SIERRA VISTA HOSPITAL,

INC., a California corporation; TWIN CITIES COMMUNITY HOSPITAL, INC., a California corporation; TENET HEALTHSYSTEM KNC, INC., a California corporation; SAN DIMAS COMMUNITY HOSPITAL, a California corporation; COMMUNITY HOSPITAL OF LOS GATOS, INC., a California corporation; TENET 1500 SAN PABLO, INC., a California corporation, FKA Anaheim MRI Holding, Inc.; MEDICAL CENTER OF GARDEN GROVE, a California corporation; AMI HTI TARZANA JOINT VENTURE, a Delaware General Partnership; AMISUB IRVINE MEDICAL CENTER, a California corporation; UHS-CORONA, INC., a California Corporation; LANCASTER HOSPITAL CORPORATION, a California corporation; UNIVERSAL HEALTH SERVICES OF RANCHO SPRINGS, INC., a California corporation; SAN GORGONIO MEMORIAL HOSPITAL, a California corporation; ADVENTIST HEALTH CLEARLAKE HOSPITAL, a California corporation; CENTRAL VALLEY GENERAL HOSPITAL, a California corporation; FEATHER RIVER HOSPITAL, a California corporation; GLENDALE ADVENTIST MEDICAL CENTER, a California corporation; Hanford Community Hospital, a California corporation;

SAN JOAQUIN COMMUNITY HOSPITAL, a California corporation; SIMI VALLEY HOSPITAL AND HEALTH CARE SERVICES, a California corporation; SONORA COMMUNITY HOSPITAL, a California corporation; UKIAH ADVENTIST HOSPITAL, a California corporation; WHITE MEMORIAL MEDICAL CENTER, a California corporation; WILLITS HOSPITAL, INC., a California Corporation; SANTA BARBARA COTTAGE HOSPITAL, a California nonprofit corporation; GOLETA VALLEY COTTAGE HOSPITAL, a California nonprofit corporation,
*Plaintiffs-Appellants*,

v.

TOM PRICE, Secretary of United States Department of Health and Human Services,[*]
*Defendant–Appellee.*

Appeal from the United States District Court
For the Central District of California
Stephen V. Wilson, District Judge, Presiding

---

[*] We substitute Tom Price for Kathleen Sebelius as Defendant-Appellee. *See* Fed. R. App. P. 43(c)(2). We substitute Tom Price for Kathleen Sebelius as Defendant-Appellee. *See* Fed. R. App. P. 43(c)(2).

Argued and Submitted April 5, 2017
Pasadena, California

Filed August 7, 2017

Before:  MILAN D. SMITH, JR. and N.R. SMITH, Circuit
Judges, and GARY FEINERMAN, District Judge[**]

Opinion by Judge Milan D. Smith, Jr.

---

## SUMMARY[***]

### Medicaid

The panel reversed the district court's summary judgment entered in favor of the Secretary of U.S. Department of Health and Human Services, and held that the Secretary's approval of a state plan amendment retroactively implementing a 10% rate reduction for outpatient services provided to beneficiaries of California's Medicaid program violated 42 U.S.C. § 1396(a)(30)(A)("§ 30(A)"), and was arbitrary and capricious.

The panel held that the Secretary erred in approving the state plan amendment pursuant to § 30(A) without requiring any evidence regarding "the extent that such care and services are available to the general population in the

---

[**] The Honorable Gary Feinerman, United States District Judge for the Northern District of Illinois, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

geographic area." The panel held that the Secretary's implicit interpretation of § 30(A) conflicted with the statute's plan language, and was not entitled to *Chevron* deference. The panel remanded for further proceedings.

**COUNSEL**

Robert C. Leventhal (argued) and A. Joel Richlin, Foley & Lardner LLP, Los Angeles, California, for Plaintiffs-Appellants.

Jeffrey Eric Sandberg (argued), Lindsey Powell, and Mark B. Stern, Attorneys, Appellate Staff; Eileen M. Decker, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

In 2011, the Secretary of Health and Human Services (HHS) implicitly interpreted 42 U.S.C. § 1396(a)(30)(A) (§ 30(A)) to permit approval of a state Medicaid plan rate reduction where the Secretary had not considered evidence comparing beneficiaries' access to medical services to that of the general public. This appeal considers what deference we owe the Secretary's interpretation of the portion of § 30(A) requiring that state plans provide for rates "sufficient to enlist enough providers so that care and services are available under the plan *at least to the extent that such care and services are available to the general*

*population in the geographic area.*" (emphasis added). In light of this express statutory language, we hold that the Secretary erred in approving a state plan amendment pursuant to § 30(A) without requiring any evidence regarding "the extent that such care and services are available to the general population in the geographic area."

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants, who are 57 hospitals that provide outpatient services to Medicaid beneficiaries, challenge the Secretary's approval of a state plan amendment (SPA) retroactively implementing a 10% rate reduction for outpatient services provided to beneficiaries of California's Medicaid program (Medi-Cal).[1] The rate reduction in question applied from July 2008 through February 2009. California (the State) first submitted the SPA to the Centers for Medicare and Medicaid Services (CMS) for the Secretary's approval in September 2008. The Secretary initially declined to approve the SPA because "the State did not provide information concerning the impact of the proposed reimbursement reductions on beneficiary access to services, even though available national data indicate[d] that this [might] be an issue for California."

The State requested that the Secretary reconsider the decision, and submitted additional information in support of the SPA. This new data included a study reflecting trends in provider participation in Medi-Cal, as well as beneficiary use of hospital outpatient services over a period of three years. The study reflected a relatively constant level of

---

[1] Two of the plaintiff hospitals that filed suit in this matter, Hospital of Barstow, Inc., and Watsonville Hospital Corp., have dismissed their appeals, and are not parties to this appeal.

Medi-Cal beneficiary utilization of hospital outpatient services during that period. The study additionally considered whether the percentage of hospitals providing outpatient services to Medi-Cal beneficiaries had changed over time, and found that it generally had not. The study concluded that Medi-Cal beneficiary "access and utilization were clearly not impacted by the 10% provider payment reduction in effect from July 2008 through February 2009."

On October 27, 2011, the Secretary approved the State's resubmitted SPA, including the temporary 10% rate reduction for hospital outpatient services. The Secretary's approval letter states that the State's documentation adequately demonstrated "compliance with section 1902(a)(30)(A) of the [Social Security] Act, as it specifically relates to reimbursement rates that are sufficient to enlist enough providers so that care and services are available at least to the extent that care and services are available to the general population in the geographic area." The letter further states that, "[b]ecause the State implemented some reductions, CMS was able to study the correlation between the reduction to the reimbursement of those services and the change in the above metrics." It finds that "[b]ased on this analysis, including a period of rate reductions, CMS was able to conclude that the implementation of the above reimbursement reductions complied with section 1902(a)(30)(A) of the Act."

Appellants filed suit in district court in December 2011, challenging the Secretary's approval of the SPA on the ground that the administrative record lacked evidence regarding the comparative level of access available to Medi-Cal beneficiaries and the general public. Appellants additionally argued that the Secretary acted arbitrarily and capriciously by failing to account for the effect of the

Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd, on the percentage of providers who participate in Medi-Cal. The district court stayed the matter pending our decision in *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013), a case that also considered the reasonableness of the Secretary's approval of other SPAs. After we published our decision in *Managed Pharmacy Care*, the parties filed cross-motions for summary judgment.

On September 17, 2015, the district court granted summary judgment for Appellee and denied the motion filed by Appellants. The district court found that *Managed Pharmacy Care* controlled this case, and that "the Court must [therefore] defer to the Secretary's approval of [the] SPA." It went on to explain that under *Managed Pharmacy Care*, "§ 30(A) requires only a substantive result; it does not prescribe procedures for achieving that result." From this proposition it reasoned that the Secretary's approval of the SPA absent information comparing the level of services available to Medi-Cal beneficiaries to that of the general public was permissible, as the statute does not expressly require any particular *procedure* for assessing compliance with its mandated equal-access *result*. Finally, the district court held that the Secretary's SPA approval was neither arbitrary nor capricious, as required for reversal under the Administrative Procedures Act (APA), 5 U.S.C. §§ 500 *et seq*.

**ANALYSIS**

## I. The Secretary's Implicit Interpretation of Section 30(A) Conflicts with the Statute's Plain Language and Is Not Entitled to *Chevron* Deference

When considering an agency's construction of a statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we first ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the statute is clear, we "must give effect to the unambiguously expressed intent of Congress," regardless of the agency's interpretation. *Id*. at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Where *Chevron* deference does not apply, we may nevertheless seek guidance from the agency's position depending upon "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position." *United States v. Mead Corp.,* 533 U.S. 218, 228 (2001).

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*., established Medicaid, a cooperative program between the federal government and the states to provide access to medical care for individuals "whose income and resources are insufficient to meet the costs of necessary medical services." *Id*. § 1396-1. States electing to participate in Medicaid must submit to the Secretary of HHS, through submission to CMS, a plan setting forth the parameters of the state's program. 42 U.S.C. § 1396a(a); 42 C.F.R. § 430.10. States wishing to amend their plans must similarly submit their proposed amendments to CMS. 42 C.F.R. § 430.12(c). Upon submission of a proposed amendment, the Secretary must evaluate its compliance with

the requirements set forth in 42 U.S.C. § 1396a(a). 42 U.S.C. §§ 1316(a)–(b), 1396a(b). The requirement here at issue, contained in § 30(A), states that,

> A State plan for medical assistance must . . .
>
> **(30)(A)** provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

*Id.* § 1396a(a)(30)(A). In accordance with the framework established by *Chevron* and its progeny, we determine the degree of deference owed to the Secretary's implicit interpretation of this language by asking first whether Congress has unambiguously expressed its intent in the portion of the statute at issue. We find that it has.

We previously considered the deference owed to the Secretary's application of § 30(A) in *Managed Pharmacy Care v. Sebelius*. The specific question addressed in *Managed Pharmacy Care* was whether the Secretary must take provider costs into consideration before approving a rate-reducing SPA. 716 F.3d at 1240. The Secretary had not done so with respect to most services, but rather had primarily considered the (1) total number of providers by

type and geographic location, (2) total Medi-Cal beneficiaries by eligibility type, (3) utilization of services by beneficiaries over time, and (4) "[a]nalysis of benchmark service utilization where available." *Id.* at 1242–43. In considering "whether the Secretary interpreted § 30(A) and approved California's SPAs within the exercise of [his] delegated authority," we looked to the "form and context of the approvals." *Id.* at 1246 (internal quotation marks omitted). We held that the "broad and diffuse" wording of § 30(A), which "uses words like 'consistent,' 'sufficient,' 'efficiency,' and 'economy,' without describing any specific steps a State must take in order to meet those standards . . . suggests that the agency's expertise is relevant in determining its application." *Id.* at 1247–48 (internal quotation marks and alteration omitted).

We further held that "the Secretary's interpretation that § 30(A) requires a *result*, not a particular *methodology* such as cost studies, is based on a 'permissible' reading of § 30(A)." *Id.* at 1249. As we explained, "[t]he statute says nothing about cost studies. It says nothing about any particular methodology. Rather, by its terms § 30(A) requires a *substantive result*—reimbursement rates must be consistent with efficiency, economy, and quality care, and sufficient to enlist enough providers to ensure adequate beneficiary access." *Id.* (emphasis added) (citations omitted). Accordingly, because Congress delegated authority to the Secretary to interpret vague statutory language, and the Secretary permissibly exercised that authority, we held that the Secretary's implicit decision that states need not inquire into provider costs before imposing rate cuts was entitled to *Chevron* deference. *Id.* at 1247.

However, neither the Secretary nor *Managed Pharmacy Care* directly discussed § 30(A)'s express requirement that

state plan rates must "assure that payments . . . are sufficient to enlist enough providers so that care and services are available under the plan *at least to the extent that such care and services are available to the general population* in the geographic area."  42 U.S.C. § 1396a(a)(30)(A) (emphasis added).  Appellants' challenge in this case rests on that omission.

Appellee does not argue that the Secretary considered information comparing beneficiary access to services with that of the general public.[2]  Rather, Appellee points to our holding in *Managed Pharmacy Care* that § 30(A) does not "prescribe any particular methodology a State must follow before its proposed rates may be approved," but rather employs "broad and diffuse" language in describing a required "substantive result."  *See Managed Pharmacy Care*, 716 F.3d at 1245, 1247.  Appellee's argument frames the requirement that Medi-Cal beneficiaries have equal access to care as merely part of the "substantive result" required by *Managed Pharmacy Care* rather than a directive to the Secretary to employ any particular methodology in making his decision.  Therefore, Appellee argues that *Managed Pharmacy Care* controls here, and the Secretary's decision is entitled to *Chevron* deference.

This conclusion elides critical distinctions between the issue actually decided in *Managed Pharmacy Care* and the case presented here.  Appellee quotes *Managed Pharmacy Care*'s statement that "by its terms § 30(A) requires a substantive result—reimbursement rates must be  . . .

---

[2] Indeed, at oral argument, counsel for Appellee repeatedly emphasized that the Secretary need not consider *any* information reflecting the general public's level of access to care and services as part of his approval process.

sufficient to enlist enough providers to ensure adequate beneficiary access," *see* 716 F.3d at 1249, in support of its contention that equal access was part of the "substantive result" previously addressed in *Managed Pharmacy Care*. Yet the very language quoted by Appellee undercuts such an analysis: In *Managed Pharmacy Care*, we did not grapple with the statute's express requirement of *equal* beneficiary access. *Id.* Rather, we concluded that the Secretary's "position that [provider] costs might or might not be one appropriate measure by which to study beneficiary access, depending on the circumstances of each State's plan, is entirely reasonable." *Id.* Our conclusion here is consistent with this observation, and we reaffirm our holding in *Managed Pharmacy Care* that § 30(A) does not require the Secretary to follow any fixed methodology or consider any given factor in reaching the statute's required substantive result.

However, despite our broad language in *Managed Pharmacy Care* explaining that § 30(A) does not require "any *particular* methodology," we did not hold that the Secretary was necessarily reasonable in using *any* methodology (or no methodology at all).[3] *See Arc of Cal. v. Douglas*, 757 F.3d 975, 988 (9th Cir. 2014) (emphasis modified); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 312 (3d Cir. 2013) (explaining that, although "Section 30(A) grants states considerable latitude in selecting a method for calculating reimbursement rates, and . . . does not impose any particular method or process for meeting its substantive

---

[3] Instead, we have since clarified that "*Managed Pharmacy Care* approved the *affirmative measures* enumerated by the state *in that case* as sufficient to meet the Section 30(A) requirements." *Arc of Cal. v. Douglas*, 757 F.3d 975, 988 (9th Cir. 2014) (emphasis added).

requirements[,] . . . that latitude is not limitless" (internal quotation marks and citation omitted)). *Managed Pharmacy Care* does not relieve the Secretary of his duty to do *something* to ensure compliance with the applicable substantive requirement, *see Arc of Cal.*, 757 F.3d at 988, and whatever metric the Secretary chooses to employ, that metric must be reasonably targeted to achieve the statute's expressly required *result*: that beneficiaries have access to care and services "at least to the extent that such care and services are available to the general population in the geographic area."

Although, as we recognized in *Managed Pharmacy Care*, § 30(A) "says nothing about cost studies," the statute is not silent as to the equal-access requirement, which is a "concrete standard, objectively measurable against the health care access afforded among the general population." *Visiting Nurse Ass'n of N. Shore, Inc. v. Bullen*, 93 F.3d 997, 1005 (1st Cir. 1996), *abrogated on other grounds by Long Term Care Pharmacy All. v. Ferguson*, 362 F.3d 50, 55 (1st Cir. 2004); *see also Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 931 (5th Cir. 2000) ("Above all, the equal access provision affords the 'objective benchmark' of access to medical care equal to that of the general population in the same geographic area."), *abrogated on other grounds by Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697 (5th Cir. 2007). And, in contrast to the requirement that payments be "consistent with efficiency, economy, and quality of care"—language which *Managed Pharmacy Care* found "broad and diffuse"—the phrase "at least to the extent" sets forth a clear and unambiguous standard.[4]

---

[4] At first glance, our description of § 30(A)'s required "substantive result" as "rates [that are] consistent with efficiency, economy, and quality care, and sufficient to enlist enough providers to ensure adequate

Congress did not require the Secretary to ensure a "reasonable" level of access, or a level of access "comparable" or "similar" to that of the general public, which ambiguous standards would benefit from the Secretary's judgment and expertise. *See Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1014 (9th Cir. 2013) ("[T]he imprecise language in question [in *Managed Pharmacy Care*] made the agency's expertise relevant to determining how to understand and interpret the statute."); *see also Managed Pharmacy Care*, 716 F.3d at 1248 ("The statute's amorphous language 'suggest[s] that the agency's expertise is relevant in determining its application.'" (quoting *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 614 (2012))). Instead, Congress required *equal* access.

The words "at least to the extent" mean, on their face, that the required level of access to care and services is equal to or greater than that of the general population. *C.f. Caminetti v. United States*, 242 U.S. 470, 485–86 (1917) ("Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual

---

beneficiary access" seems to summarize the entirety of § 30(A)'s requirements. However, what we described in *Managed Pharmacy Care* as "adequate beneficiary access" is in fact expressly defined in the statute as "care and services [that] are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C. § 1396a(a). We have consistently recognized "the rule that statutes should not be construed in a manner which robs specific provisions of independent effect." *County of Santa Cruz v. Cervantes (In re Cervantes)*, 219 F.3d 955, 961 (9th Cir. 2000) (quoting *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1551 (9th Cir. 1992), *vacated on other grounds*, 984 F.2d 345 (9th Cir. 1993)). We do not read *Managed Pharmacy Care* as effectively reading out equal access as a substantive benchmark for reviewing rates under § 30(A).

sense, and with the meaning commonly attributed to them."). Application of this unambiguous standard would essentially require only (1) that the record include data showing the level of access available to both Medi-Cal beneficiaries and the general population, and (2) a comparison of those two data sets to determine whether the Medi-Cal beneficiaries' access meets or exceeds that of the general population. Unlike the situation in *Managed Pharmacy Care*, this straightforward comparison of data under the equal-access requirement would derive little benefit from the Secretary's expertise.

We therefore hold that the Secretary's implicit interpretation of § 30(A) as not requiring consideration of Medi-Cal patients' access to care relative to that of the general public is not entitled to *Chevron* deference. *Cf. Cal. Ass'n of Rural Health Clinics*, 738 F.3d at 1014 (declining to afford *Chevron* deference to the Secretary's approval of an SPA where "we cannot fairly say that Congress was silent or ambiguous with respect to the issue at hand" (internal quotation marks omitted)). How the Secretary determines "sufficiency" of rates for the purpose of achieving "efficiency, economy, and quality of care" may be within his discretion; but the text of this portion of § 30(A) clearly contemplates an approval process targeting the particular "substantive result" of equal access. Thus the Secretary's approval of the SPAs in this case violated § 30(A), as it failed to include any consideration regarding Medi-Cal beneficiaries' access to care relative to that of the general public.

## II. The Secretary's Application of Section 30(A) Was Arbitrary and Capricious

Under the APA, we may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C. § 706(2)(A). To meet the standard for reversal set forth by the APA, a party must show that

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Managed Pharmacy Care*, 716 F.3d at 1244 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Secretary's approval of the SPA in this matter was "arbitrary and capricious" because he "entirely failed to consider an important aspect of the problem," namely, whether § 30(A)'s equal-access requirement would be satisfied. The Secretary approved rates that must ensure equal access to care for members of two groups, yet considered only the level of access provided to *one of those two groups*. To illustrate the error of this approach, consider the task of evaluating whether employment positions A and B offer an equal salary. Information regarding position A's compensation over time, the number of applicants who apply at the present salary rate, and whether the salary suffices to meet basic living standards is all very useful for determining whether or not position A is itself sufficiently compensated. *But it tells one nothing about whether the compensation equals that offered for position B*.

This is precisely the scenario presented by the Secretary's approval of the challenged SPA. The Secretary

unquestionably considered substantial evidence regarding the care and services available to Medi-Cal patients as part of the SPA approval process. But Appellee has not identified any evidence that indicates the level of service available to Medi-Cal patients *relative to that of the general public*. *C.f. Christ the King Manor*, 730 F.3d at 314 (recognizing that, although the record included data showing that payments to providers would increase from the prior year, that increase could not, alone, establish the equal-access requirement (or the other § 30(A) requirements)). Without evidence reflecting the general population's level of access, the Secretary cannot fulfill his duty to "make a determination as to whether [the plan] conforms to the requirements for approval." *See* 42 U.S.C. § 1316(a)(1). We may question the wisdom of requiring some form of comparative analysis where the information available indicates that rates are otherwise sufficient. We may not, however, disregard the plain text of the statute. As a strictly logical matter, the Secretary could not have considered § 30(A)'s expressly mandated result of equal access absent some form of comparative-access data.[5] Accordingly, the

---

[5] In addition to arguing generally that the Secretary failed to consider relative degrees of access to care as between Medi-Cal beneficiaries and the general public, Appellants contend that the Secretary's failure to consider the effect of EMTALA—pursuant to which hospitals must provide emergency medical services to patients regardless of a patient's ability to pay—constitutes error. They reason that hospitals providing emergency services will necessarily participate in Medi-Cal, as a means of ensuring that they receive *some* payment for services provided to patients unable to afford treatment, and that EMTALA therefore skews the data regarding the percentage of service providers who participate in Medi-Cal.

We agree that EMTALA likely affects this data. We decline to hold, however, that the Secretary must specifically assess the impact of any given statute on the availability of services to Medi-Cal patients. As we

Secretary's approval of the SPA absent consideration of such data was arbitrary and capricious.

## CONCLUSION

Appellee conceded at oral argument that, as a logical matter, a variable X cannot be established as equal to or greater than a variable Y based solely on the properties of X. Rather, the comparison requires some evidence regarding Y. Appellee contends that this logic does not apply, however, to the complicated task of implementing § 30(A)'s requirements for SPAs due to our *Managed Pharmacy Care* holding that the Secretary need not employ any particular methodology in assessing compliance with § 30(A)'s required substantive results.

*Managed Pharmacy Care* did not suggest that the Secretary's broad discretion to evaluate compliance with the results prescribed by § 30(A) encompasses the ability to abandon logic or disregard the express language of the relevant portion of the statute. Here the Secretary could not have considered whether rates under the challenged SPA would ensure "that care and services are available under the plan at least to the extent that such care and services are available to the general population" absent some consideration of the "care and services [] available to the

---

made clear in *Managed Pharmacy Care*, "§ 30(A) does not require any particular methodology for satisfying its substantive requirements as to modifications of state plans." 716 F.3d at 1249 (internal quotation marks omitted). So long as the Secretary considers evidence plausibly reflecting the required substantive result of equal access to care, we leave to his discretion how the potential effects of specific pieces of legislation factor into that consideration. *See id.* ("Congress did not purport to instruct the Secretary *how* to accomplish [§ 30(A)'s] substantive goals. That decision is left to the agency.").

general population." Because the parties point to no evidence that would inform such a consideration, we hold that the Secretary's approval of the SPA violated § 30(A), and was arbitrary and capricious.

We reverse and remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.