Filed 7/31/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANTA ROSA MEMORIAL HOSPITAL, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JENNIFER KENT, as Director, etc., <br><br> Defendant and Respondent. | A151588 <br><br> (City & County of San Francisco Super. Ct. Nos. CPF-09-509658, CGC-11-512059) |

The California Legislature reduced Medicaid hospital payments 10 percent between 2008 and 2011 and the federal agency administering the Medicaid program approved the rate reductions. A group of hospitals allege the rate reductions violate sections 13(A) and 30(A) of the Medicaid Act (42 U.S.C. § 1396 et seq. (Medicaid Act)), which set out, respectively, procedural and substantive requirements the state must follow when establishing reimbursement rates. (42 U.S.C. § 1396a(a).) Plaintiffs appeal from the denial of their petitions for a writ of mandate seeking to declare the rates void and to obtain an award of almost $100 million in recalculated rates.

We shall affirm the trial court's denial of a writ but, as to plaintiffs' principal contention, on a ground rejected by the trial court. We conclude that health care providers alleging a violation of 42 United States Code section 1396a(a)(30)(A) (section 30(A)) may not obtain a writ of mandate against state officials to contest Medicaid rates approved by the federal agency that administers the program. Their recourse is an administrative action against the federal agency that approved the rates. While plaintiffs may obtain a writ of mandate for violations of the procedural requirements of 42 United States Code section 1396a(a)(13)(A) (section 13(A)), we agree with the trial court that no such violation occurred here.

1

**Background**

*Medicaid statutory framework*

Medicaid is a cooperative federal-state program that provides medical care to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." (42 U.S.C. § 1396-1; *Douglas v. Independent Living Center of Southern Cal.* (2012) 565 U.S. 606, 610 (*Douglas*).) The program is jointly funded by the federal government and participating states. (42 U.S.C. § 1396a(a)(2).) "State participation in Medicaid is voluntary but if a state participates, it must comply with the federal statutes and regulations governing the programs." (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 753.)

To qualify for federal funds, participating states submit a "state plan" to the federal government. (*Douglas, supra,* 565 U.S. at p. 610.) "The State plan is a comprehensive written statement submitted by the [state] agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity" with federal law. (42 C.F.R. § 430.10.) State plans and amendments are submitted for review and necessary approval to the federal agency that administers the program, the Centers for Medicare & Medicaid Services, a division of the Department of Health and Human Services (CMS). (*Douglas, supra,* at p. 610.)[1]

The Medicaid Act contains 83 separate requirements with which a state plan must comply. (42 U.S.C. § 1396a(1)-(83).) When state plans are submitted to CMS for approval, "the agency reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." (*Douglas, supra,* 565 U.S. at p. 610.) Medicaid providers and recipients may challenge CMS approval of a state plan under the Administrative Procedure Act (APA), 5 United States Code section 701 et seq. (*Douglas, supra*, at p. 614.) The APA "requires a reviewing court to set aside agency action found to be 'arbitrary, capricious, an abuse of

_____

[1] Although approval by CMS is required for all state plan amendments, a state may put a plan amendment in effect for a limited period of time before approval by CMS. (42 C.F.R. § 457.65.)

discretion, or otherwise not in accordance with law.' " (*Ibid.*, quoting 5 U.S.C. § 706(2)(A).)

California's Medi-Cal program implements the federal Medicaid Act. (Welf. & Inst. Code, § 14000 et seq.; Cal. Code Regs., tit. 22, § 50000 et seq.) The California Department of Health Care Services (department) is charged with administering Medi-Cal in accordance with the state plan, applicable Welfare and Institutions Code provisions, and Medi-Cal regulations. (Cal. Code Regs., tit. 22, § 50004(b).) Defendant Jennifer Kent is the department's current director.

*Federal standards for Medicaid provider payments*

Federal law mandates that a state plan provide "a public process for determination of rates of payment under the plan" (§ (13)(A)) and satisfy prescribed standards for setting rates of payment (§ (30)(A)). "[T]he plan must specify comprehensively the methods and standards used by the [state] agency to set payment rates . . . ." (42 C.F.R. § 447.252(b).)

"When originally enacted in 1965, the Medicaid Act required states to reimburse health care providers for the 'reasonable cost' of hospital services rendered; the term 'reasonable cost' was defined under federal standards to correspond to the cost of services *actually* incurred by a hospital provider and otherwise allowable under Medicare." (*Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 751.) "[I]n practice[,] hospitals were reimbursed for whatever cost they had incurred. There was little incentive to contain cost or produce needed services efficiently." (*Cal. Hospital Assn. v. Obledo* (9th Cir. 1979) 602 F.2d 1357, 1359.)

Federal law no longer mandates reimbursement of costs. (*Managed Pharmacy Care v. Sibelius* (9th Cir. 2013) 716 F.3d 1235, 1249.) Federal law now requires "a substantive result," not a particular methodology or form of reimbursement. (*Ibid.*) State plans or amendments setting rates must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care

3

and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." (§ (30)(A).)

"Congress did not purport to instruct the Secretary [of the federal Department of Health and Human Services] *how* to accomplish these substantive goals. That decision is left to the agency." (*Managed Pharmacy Care v. Sibelius, supra,* 716 F.3d at p. 1249.) "Each State participating in Medicaid has unique, local interests that come to bear. The Secretary must be free to consider, for each State, the most appropriate way for that State to demonstrate compliance" with section 30(A). (*Ibid.*)

*California provider payment system*

California has a complex system for setting payment rates for healthcare services provided to Medicaid recipients. Hospitals providing inpatient services are of two general types: contract hospitals receiving contractually negotiated rates and noncontract hospitals receiving payments calculated by various methods over the years. Plaintiffs are noncontract hospitals. Currently, rates paid to noncontract hospitals are based on a statistical system that assigns the patient to one of multiple groups based on the patient's diagnosis (diagnosis-related groups). (Welf. & Inst. Code, § 14105.28.)

A different system was in place at the time immediately preceding the legislative rate changes at issue here. State regulations established the maximum reimbursement payable to a noncontract hospital as the peer grouping inpatient reimbursement payment limitation (PIRL). (Cal. Code Regs., tit. 22, § 51545 et seq.) PIRL was defined as the lesser of the hospital's (1)"customary charges"; (2) audited "allowable costs" in accordance with Medicare standards and principles of cost-based reimbursement; (3) an all-inclusive rate per patient discharge; or (4) a median peer hospital group rate. (Cal. Code Regs., tit. 22, § 51545(a)(5), (70)(A)-(D), (71); see generally *Mission Hospital Regional Medical Center v. Shewry* (2008) 168 Cal.App.4th 460, 474-475 (*Mission Hospital*).) In practice, the maximum amount a noncontract hospital received was its "allowable costs"; it received less than that amount if the hospital incurred costs in excess of rate per discharge and peer group limits.

4

*Provider rate changes*

In 2008, in the midst of a major recession, the California Legislature enacted a series of rate reductions for services provided to Medicaid recipients. At issue here is a temporary rate reduction for hospital inpatient services that decreased by 10 percent payment for services provided from July 2008 through April 2011.

In February 2008, the Legislature enacted Assembly Bill No. 5 (AB 5). (Stats. 2007-2008, 3rd Ex. Sess., ch. 3, § 15.) As codified, the statute provided, in relevant part: "Notwithstanding any other provision of law, for acute care hospitals not under contract with the [state] . . . , the reimbursement amount for inpatient services provided to Medi-Cal recipients for dates of service on and after July 1, 2008, . . . shall be limited to 90 percent of the hospital's audited allowable cost . . . ." (Welf. & Inst. Code, § 14166.245.) Thus, AB 5 modified the second component of the PIRL defined in state regulations, reducing reimbursement from 100 percent to 90 percent of "audited allowable costs." In September 2008, the Legislature passed Assembly Bill No. 1183 (AB 1183), which amended the statute to further reduce payments to certain noncontract hospitals to the lesser of 90 percent of audited allowable costs or a rate equal to the regional average contract rate minus 5 percent. (Stats. 2008, ch. 758, § 57.) The AB 5 and AB 1183 rate reductions were eliminated prospectively in April 2011. (Stats. 2011, ch. 19, § 4.)

Between March and September 2008, the department published several notices explaining AB 5 and AB 1183 rate reductions in both the California Regulatory Notice Register and on the Medi-Cal website. The department also submitted state plan amendments (SPA) to CMS seeking approval of the payment reductions. The department initially submitted a single state plan with rate reductions for a number of medical services (SPA 08-009). At CMS's request, the department split the single SPA into four separate SPAs for different medical services, including SPA 08-009A reflecting rate reductions for noncontract hospital inpatient services at issue here.

CMS initially disapproved the plan amendment because the state did not provide sufficient information on the impact of the reduced rates on Medicaid recipients' access

5

to care. Additional information was submitted. In October 2011, following reconsideration, CMS approved the plan amendments incorporating AB 5 and AB 1183 rate reductions. CMS "determined that these amendments comply with section [(30)(A)] of the Act and all other applicable requirements of the Act."

**Discussion**

1. *Health care providers may not seek a writ of mandate against the department to contest Medicaid reimbursement rates under section 30(A).*

Plaintiff hospitals seek a writ of mandate declaring void these reduced rates of payment they received for inpatient services provided to Medicaid recipients and ordering a recalculation of those rates. Medicaid providers may challenge the sufficiency of payment rates by petitioning the federal agency that approved the rates to set aside the disputed rates and they may obtain judicial review should the agency uphold the rates. (*Douglas, supra,* 565 U.S. at p. 614; *Hoag Memorial Hospital Presbyterian v. Price* (9th Cir. 2017) 866 F.3d 1072, 1081.)[2] The department correctly contends that an administrative rate challenge followed by judicial review of the agency determination under the Administrative Procedure Act, 5 United States Code section 701 et seq., is the exclusive remedial path to correct rates that do not comply with section 30(A) standards.

The trial court rejected this contention but went on to deny plaintiffs' petitions on the merits, finding the rates compliant with the Medicaid Act. We need not consider the many issues bearing on the merits of plaintiffs' claims because we conclude that under no

---

[2] *Hoag* concerned a state plan incorporating AB 5 rate reductions for outpatient hospital services (SPA 08-009B1). (*Hoag Memorial Hospital Presbyterian v. Price, supra,* 866 F.3d at p. 1075.) The Ninth Circuit found the federal agency's approval of the state plan arbitrary and capricious because the agency failed to consider the impact of the reduced rates on access to care. (*Id.* at pp. 1081-1082.) Although the state plan being questioned in the present case incorporated the same AB 5 rate reductions for inpatient hospital services (SPA 08-009A), plaintiffs here seek judicial relief directly against the department rather than in an administrative action against the federal agency that approved the rates, as in *Hoag*. Despite *Hoag's* limited relevance, we grant plaintiffs' request for judicial notice of documents filed in that case. (Evid. Code, § 452.)

6

circumstances is writ relief against the state agency available to challenge on substantive grounds rates that have been approved by CMS.

"A writ of mandate may be issued by any court to any . . . person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . . " (Code Civ. Proc., § 1085, subd. (a).) The writ "is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance." (*Conlan v. Bonta, supra,* 102 Cal.App.4th at p. 752.) "Where a petition challenges an agency's failure to perform an act required by law . . . , the remedy is by ordinary mandate." (*Ibid*.)

Medicaid recipients and providers may seek a writ of mandate to compel compliance with those provisions of federal law that create a ministerial duty and vest the provider or recipient with a right to performance of that duty. (E.g., *Mission Hospital, supra,* 168 Cal.App.4th 460 [failure to comply with public notice and comment requirements of section 13(A)]; *Conlan v. Bonta, supra,* 102 Cal.App.4th at pp. 763-764 [recipient entitled to retroactive coverage under § 34 of the Medicaid Act]; *Doctor's Medical Laboratory, Inc. v. Connell* (1999) 69 Cal.App.4th 891, 896-898 [provider entitled to administration of payments by designated state agency under § 5 of the Medicaid Act].)

Although plaintiffs also make the contention that the disputed rates were not adopted in compliance with section 13(A), which contention we discuss below, their principal argument is that the rates do not comply with the standards prescribed by section 30(A). (42 U.S.C. § 1396a(a).) "In general, section (13)(A) imposes procedural requirements the state must follow when establishing reimbursement rates, and section (30)(A) imposes substantive findings the state must make when establishing rates." (*Mission Hospital, supra,* 168 Cal.App.4th at p. 470.)

As noted earlier, section 30(A) does not establish specific rates or a specific methodology for setting rates, but imposes general standards: a Medicaid state plan must "provide such methods and procedures relating to . . . the payment for[] care and services

7

available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

Section 30(A) is commonly understood to set two standards for Medicaid provider rates: "efficiency, economy and quality of care" (EEQ) and equal access to care. The petition for writ of mandate alleges the rates at issue violated both standards but at trial plaintiffs pursued only their EEQ claim and the trial court ruled on that basis alone. Following the Ninth Circuit decision in *Hoag Memorial Hospital Presbyterian v. Price, supra,* 866 F.3d 1072 (see fn. 3, *ante),* plaintiffs now seek to revive the equal access contention. "The standard rule, of course, is that a party may not raise a new contention on appeal." (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227.) There are exceptions to this rule, as plaintiffs note, but none are applicable here. In any event, the critical question, to which we now turn, is whether section 30(A) is enforceable in writ proceedings against the state agency administering the program, regardless of the particular standard alleged to be violated.

As plaintiffs point out, California courts have previously enforced section 30(A) by writs of mandate directed to the department. (*California Assn. for Health Services at Home v. State Dept. of Health Care Services* (2012) 204 Cal.App.4th 676, 682-683, 685-690; *California Hospital Assn. v. Maxwell-Jolly* (2010) 188 Cal.App.4th 559, 569-571.) While it may be argued that these cases are distinguishable because focusing primarily on procedural deficiencies and not disapproving payment rates that had been approved by CMS, there is a more fundamental reason for which these cases are not controlling: all predate the United States Supreme Court decision in *Armstrong v. Exceptional Child Center, Inc.* (2015) __ U.S. __ [135 S.Ct. 1378] (*Armstrong*).

In *Armstrong* providers of residential habilitation services claimed an Idaho state agency set reimbursement rates lower than section 30(A) permits and asked a federal district court to order the agency's administrators to increase the rates. (*Armstrong,*

*supra*, __ U.S. at p. __ [135 S.Ct. at p. 1382].) The district court entered summary judgment for the providers, "holding that Idaho had not set rates in a manner consistent with § 30(A)," and the Ninth Circuit affirmed the judgment. (*Ibid.*)

The Supreme Court reversed the judgment, finding no right to equitable relief under section 30(A). (*Armstrong, supra,* __ U.S. at pp. __- __ [135 S.Ct. at pp. 1385-1387].) The court found "[t]wo aspects of § 30(A) establish Congress's 'intent to foreclose' equitable relief. [Citation.] First, the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements . . . is the withholding of Medicaid funds" by the federal agency. (*Id.* at p. __ [135 S.Ct. at p. 1385].) As noted above, Medicaid providers may petition the federal agency that administers Medicaid to invalidate state reimbursement rates and, if denied, obtain judicial review of the agency's administrative decision. (*Douglas, supra,* 565 U.S. at p. 614; *Hoag Memorial Hospital Presbyterian v. Price, supra,* 866 F.3d at p. 1081.) *Armstrong* reasoned that "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.' " (*Armstrong, supra,* at p. __ [135 S.Ct. at p. 1385].) Second, the standards prescribed by section 30(A) are so broad and nonspecific that they are "judicially unadministrable." (*Ibid.*) "It is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are 'consistent with efficiency, economy and quality of care,' all the while 'safeguard[ing] against unnecessary utilization of . . . care and services.' Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress 'wanted to make the agency remedy that it provided exclusive,' thereby achieving 'the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking,' and avoiding 'the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action.' [Citation.] The sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, . . . shows the Medicaid Act precludes private enforcement of § 30(A)." (*Ibid.*)

9

Plaintiffs contend, and the trial court ruled, that *Armstrong* precludes private enforcement of section 30(A) only in federal court. We disagree. All of the reasoning in *Armstrong* applies equally to proceedings in state as well as federal courts. As the Supreme Court held, "Section 30(A), fairly read in the context of the Medicaid Act, 'display[s] a[n] intent to foreclose' the availability of equitable relief." (*Armstrong, supra,* __ U.S. at p. __ [135 S.Ct. at p. 1386].) In state as in federal court, equity follows the law. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." (*Id*. at p. __ [135 S.Ct. at p. 1385].) State courts are similarly constrained. "Principles of equity cannot be used to avoid a statutory mandate." (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492.) The Supreme Court held "the Medicaid Act implicitly precludes private enforcement of § 30(A) and [Medicaid providers] cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." (*Armstrong, supra,* p. __ [135 S.Ct. at p. 1385].)

A recent federal case is in accord. (*Tulare Local Health Care Dist. v. Cal. Dept. of Health Care Services* (N.D. Cal. July 20, 2018, No. 15-cv-02711-PJH) 2018 U.S.Dist. Lexis 121926 (*Tulare*).) *Tulare* observed: "Although *Armstrong* did not squarely face the precise facts of this case—whether health care providers can bring a private cause of action pursuant to California state law to enforce § 30(A)—this court understands the holding of *Armstrong* to be what it says: 'the Medicaid Act precludes private enforcement of § 30(A) in the courts,' " which applies to both federal and state courts. (*Id.* at p. *22.)

A writ of mandate may issue only where the respondent "has a clear, present and usually ministerial duty to perform." (*Conlan v. Bonta, supra,* 102 Cal.App.4th at p. 752.) "A ministerial duty is one that the entity is required to perform in a prescribed manner without any exercise of judgment or opinion concerning the propriety of the act." (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 707-708.) Section 30(A)'s broad and nonspecific rate setting standards, in contrast, are "judicially unadministrable," as the Supreme Court found.

10

(*Armstrong, supra,* __ U.S. at p. __ [135 S.Ct. p. 1385].) As Justice Breyer amplified in his concurrence, section 30(A) "sets forth a federal mandate that is broad and nonspecific. [Citation.] But, more than that, § 30(A) applies its broad standards to the setting of rates. The history of ratemaking demonstrates that administrative agencies are far better suited to this task than judges. . . . [¶] Reading § 30(A) underscores the complexity and nonjudicial nature of the rate-setting task." (*Armstrong, supra,* p. __ [135 S.Ct. at p. 1388 (conc. opn. of Breyer, J.).) These considerations are no less applicable to judicial proceedings in state court.

Finally, plaintiffs argue that the provision in section 30(A) that Medicaid payments be "consistent with efficiency, economy, and quality of care" creates an enforceable duty when coupled with previously applicable state regulations. (Cal. Code Regs., tit. 22, § 51536 et seq.) As described above, under the prior regulations a hospital provider was paid the lesser of its specified "allowable costs" or an amount equal to rate per discharge and peer group limits. (*Id.*, § 51545, subd. (a)(70)(A)-(D), 71.) Plaintiffs claim this methodology, known as PIRL, "is the way California measures the 'efficiency' and 'economy' of hospitals for purposes of section 30(A)," making section 30(A) enforceable by writ of mandate. But the PIRL regulations plaintiffs seek to enforce were superseded by the statutes at issue here, which reduced payments to a percentage of specified costs. (Welf. & Inst. Code, § 14166.245 [imposing payment reductions 'notwithstanding any other provision of law"].) Plaintiffs may not compel compliance with superseded regulations. Moreover, as the trial court rightly observed, neither "PIRL nor any other California regulation can define . . . section 30(A) or any portion of the Medicaid Act." "[S]ection 30(A) does not mandate or require use of the PIRL and, thus, . . . any departure from PIRL does not violate section 30(A)" of the federal Medicaid Act.[3]

---

[3] The federal court in *Tulare* has likewise rejected petitioners' argument that state regulations can be read to augment section 30(A) and create a specific duty enforceable by writ of mandate: "California cannot reduce the complexity of a federal statute by

2. *Neither the Legislature nor the department failed to comply with notice requirements under section 13(A).*

Plaintiffs also seek to invalidate the Medicaid reimbursements based on the contention that the legislative process used to adopt the rate changes failed to provide sufficient notice of the proposed changes. Section 13(A) provides: A state plan for medical assistance must provide "for a public process for determination of rates of payment under the plan for hospital services . . . under which — [¶] (i) proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published, [¶] (ii) providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications, [and] [¶] (iii) final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published . . . ."

Section 13(A)'s requirement for the publication of proposed Medicaid rates has been considered sufficiently specific to create a ministerial duty enforceable in writ proceedings by health care providers and applicable to legislatively adopted rate revisions. (*Mission Hospital, supra,* 168 Cal.App.4th at pp. 478-480, 485-491.) Plaintiffs argue the legislative rate changes here were enacted shortly after assembly bills proposing the changes were introduced, with virtually no time for public notice and comment while the bills were before the Legislature. The department does not deny the assertion but counters that federal law requires public notice to occur before implementation of rate changes, not adoption, and that standard was met here.

Section 13(A) does not explicitly state whether notice of rate changes must occur prior to their enactment or prior to their effective date but an implementing regulation does. The regulation provides, in relevant part: "The notice must . . . [b]e published before the proposed effective date of the change." (42 C.F.R. § 447.205(d)(1).) CMS considered the requirements of section 13(A) when reviewing the SPA and found public

unilaterally defining or altering its terms." (*Tulare, supra,* 2018 U.S.Dist. Lexis 121926 at p. *26.)

notice of the rate changes compliant with its requirements. CMS demanded the department provide documentation of the "public notice(s) issued on the reimbursement changes proposed by this SPA." CMS conducted its review of the SPA "according to the statutory requirements" of section (A)(13), among other statutes and regulations, and approved the SPA. Clearly, CMS construed section 13(A) to permit notice of statutory rate changes after enactment but prior to the effective date of the change, as occurred here. "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." (*Chevron U.S.A. v. Natural Res. Def. Council* (1984) 467 U.S. 837, 844; accord *Tulare, supra*, 2018 U.S.Dist. Lexis 121926.)

Plaintiffs are mistaken that *Mission Hospital* held that notice of a rate change is required "during the actual legislative process," before enactment. In that case, the Legislature adopted a freeze on Medicaid reimbursement rates to noncontract hospitals. (*Mission Hospital, supra,* 168 Cal.App.4th at p. 476.) The bill containing the rate freeze was introduced on July 27, 2004, and enacted two days later as an urgency measure. (*Id.* at pp. 481-482.) The Governor approved the bill on August 16, 2004, and it became effective that day and applied retroactively to July 1, 2004, the beginning of the state's fiscal year. (*Id.* at p. 476.) No notice of the rate changes occurred until September 1, 2004, when limited information was posted on the Internet and full notice was not provided until November 11, 2005, 15 months after the effective date of the rate changes. (*Id.* at pp. 482-483.) The plaintiffs in that case argued that "the Department violated the mandatory duty imposed by section 13(A) to provide notice and an opportunity for review and comment . . . before the freeze *became effective.*" (*Id.* at p. 483, italics added.) In sustaining that contention, the court held that "[t]he federal statute requires the state plan to provide for public process for determining rates before the rates and their methodologies *become effective."* (*Ibid.*, italics added.) *Mission Hospital* is inapplicable here, where notice was provided before the rate changes became effective.

Plaintiffs are also badly mistaken in arguing that the regulation, 42 Code of Federal Regulations section 447.205(d)(1), is "obsolete," "defunct" and "no longer

13

relevant or applicable" to section 13(A) notice requirements. Plaintiffs rely on a statement in a footnote in *Mission Hospital* that the Secretary of the federal Department of Health and Human Services had once "expressed the opinion" that the regulation was superseded by an amendment to section 13(A) and proposed a new modifying regulation. They ignore the final sentence of the footnote, stating that "the Secretary later withdrew the proposed regulations." (*Mission Hospital, supra,* 168 Cal.App.4th at p. 473, fn. 3.) As the court made explicit in the body of the opinion, section 447.205 "has not been repealed." (*Id.* at p. 471.) "The notice provisions of [section] 447.205 apply to the state's adoption and change of the methods and procedures it uses for setting rates . . . ." (*Id.* at p. 474.)

In short, there is no credible basis for the contention that in enacting and implementing AB 5 and AB 1183, the Legislature or the department failed to comply with section 13(A).

**Disposition**

The judgment is affirmed.

Pollak, J.

We concur:

Siggins, P.J.
Jenkins, J.

14

Trial court:                                San Francisco Superior Court

Trial judge:                                Honorable Harold Kahn

Counsel for plaintiffs and appellants:      Michael S. Sorgen, Thomas J. Weiss, and Dean L. Johnson

Counsel for defendant and respondent:     Xavier Becerra, Attorney General, Julie Weng-Gutierrez Senior Assistant Attorney General, Susan M. Carson, Supervising Deputy Attorney General, and Nimrod P. Elias, Deputy Attorney General.

A151588