**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KALISPEL TRIBE OF INDIANS, a
federally recognized Indian tribe,
*Plaintiff-Appellant*,

and

SPOKANE COUNTY, a municipal
corporation and political subdivision
of the state of Washington,
*Plaintiff*,

v.

U.S. DEPARTMENT OF THE INTERIOR;
DEB HAALAND, Secretary of the
Interior; BRYAN NEWLAND,
Principal Deputy Assistant Secretary
for Indian Affairs; BUREAU OF
INDIAN AFFAIRS; STANLEY SPEAKS,
Northwest Regional Office, Bureau
of Indian Affairs,
*Defendants-Appellees*,

SPOKANE TRIBE OF INDIANS,
*Intervenor-Defendant-Appellee*.

No. 19-35808

D.C. No.
2:17-cv-00138-
WFN

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, District Judge, Presiding

Argued and Submitted February 8, 2021
San Francisco, California

Filed June 1, 2021

Before:  Marsha S. Berzon, Morgan Christen, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Christen

---

## SUMMARY[*]

---

### Tribal Gaming

The panel affirmed the district court's summary judgment in favor of the U.S. Department of the Interior ("DOI"), the Bureau of Indian Affairs, federal officials, and the Spokane Tribe of Indians, in an action brought by the Kalispel Tribe of Indians, challenging the Secretary of DOI's decision that the Spokane Tribe of Indians' proposed gaming establishment on newly acquired off-reservation land would not be detrimental to the surrounding community.

Kalispel has owned and operated the Northern Quest Resort and Casino in Airway Heights, Washington since

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

2000.  The land on which the casino sits is located within the Spokane Tribe's historic territory.

The panel rejected Kalispel's primary argument that the Indian Gaming Regulatory Act ("IGRA") precluded the Secretary of DOI from authorizing a new off-reservation gaming operation where additional gaming would cause any detriment to a nearby Indian tribe, regardless of the net impact to the surrounding community.      The panel held that IGRA required the Secretary to weigh and consider the various interests of those within the surrounding community when deciding whether additional off-reservation gaming would be detrimental to the surrounding community.   A showing that additional gaming may be detrimental to some members of the surrounding community, including an Indian tribe, does not dictate the outcome of the Secretary's two-step determination under IGRA for authorizing off-reservation gaming.

The panel also rejected Kalispel's argument that the Secretary's two-step determination was both *ultra vires* and arbitrary and capricious because the Secretary did not properly evaluate the detriment Kalispel would suffer if the Spokane Tribe was allowed to move forward with its competing casino.  The panel agreed with Kalispel that lost gaming revenue, discontinued or diminished per capita expense payments (PCEPs) to its members, and a smaller tribal governmental budget were real and cognizable detriments, but the administrative record did not support Kalispel's contention that the Secretary failed to consider these negative impacts to Kalispel in making the two-step determination.  The panel concluded that the Secretary had the authority to issue a two-step determination under IGRA, and the Secretary's decision to issue a favorable decision here

was neither arbitrary nor capricious under the Administrative Procedure Act.

Kalispel contended that the Secretary previously announced a policy that additional off-reservation gaming would not be approved if a nearby Indian tribe could show that additional gaming would be detrimental to it. The panel held that Kalispel raised the issue for the first time on appeal, and the panel would not reach the merits of the argument because Kalispel did not preserve it.

The panel held that because Kalispel had not shown that the Secretary failed to consider the claimed harms of the project or to comply with the relevant statutes and regulations, it had not shown that the Secretary violated the federal government's trust duty owed to Kalispel.

---

## COUNSEL

Daniel I. S.J. Rey-Bear (argued), Rey-Bear McLaughlin LLP, Spokane, Washington; Zachary L. Welcker, Kalispel Tribe of Indians Legal Office, Airway Heights, Washington; for Plaintiff-Appellant.

Tamara Rountree (argued), John L. Smeltzer, Joann Kintz, and Devon L. McCune, Attorneys; Eric Grant, Deputy Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Andrew S. Caulum, Senior Attorney, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; for Defendants-Appellees.

Danielle Spinelli (argued), Kevin M. Lamb, and James D. Barton, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Scott Wheat, General Counsel, Office of the Spokane Tribal Attorney, Wellpinit, Washington; for Intervenor-Defendant-Appellee.

---

**OPINION**

CHRISTEN, Circuit Judge:

Kalispel Tribe of Indians, a federally recognized Indian tribe, appeals the district court's order granting summary judgment in favor of the United States Department of the Interior (the Secretary), the Bureau of Indian Affairs, and federal officials. Kalispel challenged the Secretary's decision that the Spokane Tribe of Indians' proposed gaming establishment on newly acquired off-reservation land would not be "detrimental to the surrounding community," 25 U.S.C. § 2719(b)(1)(A). Kalispel challenged the Secretary's decision pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706; the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347; and the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2719. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's judgment.

**I**

Kalispel has owned and operated the Northern Quest Resort and Casino in Airway Heights, Washington since 2000. The land on which Northern Quest sits is located within the Spokane Tribe's historic territory. The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2719–2721 (IGRA),

allows federally recognized tribes to apply for gaming permits. IGRA also provides that, if the land where a gaming establishment is to be built was acquired after the date IGRA was enacted, the Secretary of the Interior must apply a two-step test to determine whether additional off-reservation gaming will be permitted. *Id.* §§ 2719(a), 2719(b)(1)(A). Specifically, IGRA requires the Secretary to decide whether: (1) the gaming establishment "would be in the best interest of the Indian tribe"; and (2) the gaming establishment "would not be detrimental to the surrounding community." *Id.* § 2719(b)(1)(A).

In 2001, the Spokane Tribe began the administrative process to request the Secretary to allow it to open a new casino two miles away from Kalispel's Northern Quest casino. That year, the Department of the Interior took a 145-acre parcel of land in Airway Heights into trust for the Spokane Tribe. Citing economic struggles—including declining sources of income and the costs of mitigating uranium contamination in the Spokane Indian Reservation's groundwater—the Spokane Tribe argued that it needed another casino because its members were living substantially below the federal poverty line and suffering from high rates of unemployment. The Spokane Tribe asserted that its existing resources were not enough to cover its members' basic needs.

The administrative process to consider the Spokane Tribe's request to open an off-reservation gaming establishment took over ten years to complete. The Secretary solicited two rounds of consultation letters from state, local, and tribal officials, including Kalispel's tribal government. The Secretary also prepared a draft environmental impact statement (EIS), in accordance with the National

Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370m-12, and circulated a draft EIS in January 2012 for public comment. The Secretary circulated a final EIS in January 2013 for further public review and comment.

Kalispel objected at several points during the Spokane Tribe's application process, including once to the draft EIS and once to the final EIS. Kalispel asserted that the revenue it would lose to a competing gaming establishment would cause Kalispel to be "unable to meet existing debt obligations without foregoing most or all of the . . . governmental operations, economic development efforts, and programs and services that provide for the welfare of tribal members." To demonstrate and quantify the economic harm it projected, Kalispel commissioned two analyses of the Spokane-area gaming market. One report was prepared by PKF Consulting USA, and another was authored by Nathan Associates Inc. Both studies suggested the Spokane Tribe's proposed gaming establishment would have a significant impact on Northern Quest's financial performance, on the resulting revenue available to fund Kalispel's tribal government, and on Kalispel's ability to make per capita expense payments (PCEPs) to its members. PCEPs are tribal government payments to tribal members derived from discretionary use of casino revenue, and Kalispel argued this source of income is vitally important to cover its members' basic needs, such as housing.[1] *See* 25 U.S.C. § 2710(b)(3).

---

[1] Congress required gaming revenues to be used solely for statutorily enumerated functions, including "to fund tribal government operations or programs" and "to provide for the general welfare of the Indian tribe and its members." 25 U.S.C. § 2710(b)(2)(B). IGRA authorizes PCEPs only if essential government services are funded first. 25 U.S.C. § 2710(b)(3) (providing "[n]et revenues . . . *may* be used to make per capita payments

Kalispel also commissioned a debt analysis that suggested Kalispel would not be able to pay off the substantial construction debts it incurred to build Northern Quest if new competition reduced its gaming revenue.

In response, the Secretary commissioned four reports and compiled an objective analysis of Kalispel's financial projections.    These reports concluded that Kalispel's projections were "wholly unreliable" and based on data and subsets that did not present an accurate baseline.  The reports further concluded that, although Kalispel would suffer an initial loss of business if the new casino went forward, Kalispel's gaming revenue would resume growing after the first year of the new casino's operation.  The reports also projected that if the new gaming establishment were permitted to open, Kalispel would be able to fulfill its loan obligations, and that Kalispel had not shown that it would not be able to operate its government or provide for its members. The findings of the reports commissioned by the Secretary were reflected in both the draft EIS and final EIS, giving Kalispel an opportunity to respond to the studies and provide further comments.  The Spokane Tribe formally requested a two-part IGRA determination in 2012.

On June 25, 2015, the Secretary issued a Secretarial Determination that concluded the proposed gaming facility would be in the Spokane Tribe's best interest and that it would not be detrimental to the surrounding community. In reaching this decision, the Secretary considered all the information gathered during the consultation and NEPA process, as well as public comments and the studies the

. . . only if" the tribe has already prepared a plan to meet its government essential services (emphasis added)).

Secretary and others had commissioned. The Secretary detailed the beneficial effects the new casino was expected to yield for the Spokane Tribe, including jobs and revenue that would enable the Spokane Tribe to address the hardships its members currently suffered.

The Secretarial Determination addressed the impact the new casino would have on the surrounding community and projected over $300 million in economic output, the creation of over 2,200 construction jobs, and nearly $250 million in annual output that would support almost 2,900 long-term jobs and create millions of dollars in tax revenue. Despite initial competition from the new casino and temporary reduction in Kalispel's gaming revenues, the long-term projections for Northern Quest were positive and "normative revenue growth" was expected to resume after the first year of the new casino's operation.

The Secretarial Determination addressed the studies Kalispel commissioned and the comments Kalispel submitted. Even assuming Kalispel's revenue projections were accurate, the Secretary concluded that the projected decrease to Kalispel's gaming revenues "would not prohibit the Kalispel tribal government from providing essential services and facilities to its membership." The Secretary recognized that Kalispel might not be able to make PCEP payments to tribal members, but reached a favorable two-step determination, in part because the Secretary projected the temporary reduction to Kalispel's budget would be 16.7 percent, much less than the percentage Kalispel had forecast. The Secretary predicted that the drop in Northern Quest's gaming revenue would diminish over time, and also determined that members of the surrounding community other than Kalispel would significantly benefit, including the

City of Airway Heights and Spokane County. In the end, the Secretary concluded that the competition from the Spokane Tribe's new casino would not create a detrimental impact on the surrounding community.

In 2017, Kalispel sued the Secretary in federal district court, alleging that the Secretary's two-step determination violated the Administrative Procedure Act (APA), IGRA, and NEPA. The Spokane Tribe successfully intervened as a defendant, and the parties agreed that the record provided all the facts necessary for the district court to decide cross-motions for summary judgment.

After briefing was completed, the court held oral argument and ruled that the Secretary complied with IGRA, and that the two-step determination was supported by substantial evidence and was neither arbitrary nor capricious. In so ruling, the district court considered the Secretary's assessment of the impact to the neighboring Fairchild Air Force Base, the Secretary's consultations with Spokane County, and the final EIS. The court concluded that the record supported the Secretary's interpretation of the differing expert opinions, and rejected Kalispel's argument that the Secretary breached the federal government's trust duty to Kalispel by issuing a decision that was favorable to the Spokane Tribe. The court concluded that the Secretary's trust relationship extends to all tribes and requires the government to "not favor one tribe over another." The district court granted the Secretary's and the Spokane Tribe's motions for summary judgment, and denied Kalispel's motion for summary judgment. Kalispel timely appealed.

## II

We review an order granting summary judgment de novo, "thus reviewing directly the agency's action under the [APA's] arbitrary and capricious standard." *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1217 (9th Cir. 2015) (quoting *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1144 (9th Cir. 2013), *as amended* (July 9, 2013)). The APA requires reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)–(D).

Under this standard, our review is "narrow" and we cannot "substitute our judgment for that of [the agency]." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Reversal is proper only "if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 656 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

## III

Congress enacted IGRA "to provide a statutory basis" for gaming and to "promot[e] tribal economic development, self-

sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). To further these objectives, IGRA sets forth a procedure for states and Indian tribes to negotiate compacts that allow certain types of gaming on reservation land. *Id.* § 2710(d)(1). Subject to limited exceptions, IGRA prohibits gaming on off-reservation land acquired by the Secretary of the Interior in trust for the benefit of a tribe after the date IGRA was enacted. *Id.* § 2719(a). Relevant here, one exception provides that gaming may be permitted on off-reservation lands held in trust if "the Secretary, after consultation with the Indian tribe and appropriate State and local officials . . . determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community . . . ." *Id.* § 2719(b)(1)(A).

The Secretary must conduct a two-part determination before authorizing off-reservation gaming. Specifically, the Secretary must consider: (1) whether the proposed gaming establishment "would be in the best interest of the Indian Tribe"; and (2) whether the proposed gaming establishment "would . . . be detrimental to the surrounding community." *Id.* The Secretary must determine whether a gaming project would be detrimental to the surrounding community on a "case-by-case basis [considering] the information developed in the application and consultation process." *Gaming on Trust Lands Acquired After October 17, 1988*, 73 Fed. Reg. 29354-01, 29373 (May 20, 2008). The factors the Secretary must consider include: (1) "environmental impacts and plans for mitigating adverse impacts"; (2) "[a]nticipated impacts on the social structure, infrastructure, services, housing, community character, and land use patterns of the surrounding community"; (3) "[a]nticipated impacts on the economic development, income, and employment of the

surrounding community"; (4) "[a]nticipated costs of impacts . . . and identification of sources of revenue to mitigate them"; (5) the cost of treatment for any problem gambling attributable to the new gaming establishment; (6) another tribe's historical connection to the land, if any; and (7) "any other information" deemed relevant.  25 C.F.R. § 292.18. IGRA's multi-step process also requires the Secretary to confer with relevant parties, including nearby Indian tribes and public officials, share comments with the applicant tribe, and request comments from the community.  *See id.* § 292.19, .20.

In addition to IGRA and its implementing regulations, the Secretary must also comply with NEPA, which requires federal agencies to prepare an EIS if their actions will "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(C).  Among other things, an EIS must identify "any adverse environmental effects which cannot be avoided should the proposal be implemented" and "alternatives to the proposed action."  *Id.* § 4332(C)(ii), (iii).[2]

## A

In the district court, Kalispel did not challenge the Secretary's determination that an additional gaming operation would be in the best interest of the Spokane Tribe.  Rather, the parties' dispute, in the district court and on appeal, centers on whether the Secretary properly determined the Spokane Tribe's proposed gaming establishment "would not be detrimental to the surrounding community."  The parties offer competing interpretations of "detrimental to the surrounding

---

[2] In this appeal, Kalispel does not dispute that the Secretary complied with NEPA's various procedural requirements.

community" as used in 25 U.S.C. § 2719(b)(1)(A). Kalispel's primary argument is that IGRA precludes the Secretary from authorizing a new off-reservation gaming operation where additional gaming would cause *any* detriment to a nearby Indian tribe, regardless of the net impact on the surrounding community. The Secretary and Spokane argue that IGRA only precludes issuing a gaming permit when the Secretary determines an off-reservation gaming establishment would be detrimental to the surrounding community as a whole, rather than detrimental to any individual community member, including a nearby Indian tribe.

We begin as we must, by looking to the text of IGRA. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). "[W]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 621 (9th Cir. 2005) (second alteration in original) (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001) (en banc)). We construe the entire statute, examining "not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999).

The term "detrimental" is not defined by IGRA, and therefore we interpret it according to its "ordinary, contemporary, common meaning." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc), *amended on reh'g en banc in part*, 360 F.3d 1374 (9th Cir. 2004) (en banc) (quoting *United States v. Smith*, 155 F.3d 1051, 1057 (9th Cir. 1998)). "Detriment" is

ordinarily defined as "[a]ny loss or harm suffered by a person or property; harm or damage." Black's Law Dictionary 565 (11th ed. 2019). But IGRA does not provide that *any* showing of detriment is sufficient to preclude the Secretary from authorizing a new permit. Rather, the Secretary is charged with determining whether additional gaming would be a detriment "to the surrounding community." 25 U.S.C. § 2719(b)(1)(A). Regulations promulgated by the Bureau of Indian Affairs interpret the "surrounding community" to include "local governments and nearby Indian tribes located within a 25-mile radius of the site of the proposed gaming establishment." 25 C.F.R. § 292.2. It is uncontested that Kalispel is a part of the surrounding community.

Kalispel urges us to hold that any detriment to Kalispel necessarily constitutes detriment to the "surrounding community" pursuant to 25 U.S.C. § 2719(b)(1)(A). We are not persuaded. Kalispel's reading overlooks that the "surrounding community" includes more than one entity, 25 C.F.R. § 292.2, and detriment to Kalispel does not necessarily mean net detriment to the surrounding community as a whole. It would be unreasonable to interpret IGRA as requiring a complete alignment of interests in the surrounding community before a favorable two-part determination can be issued. Indeed, such a reading would frustrate Congress's purpose for enacting IGRA: to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). The Secretary's regulations make clear that threatened harm to Kalispel or to any other member of the surrounding community must factor into the Secretary's calculation of whether additional off-reservation gaming will be detrimental, but detriment to any one member is not necessarily dispositive. *See* 25 C.F.R. § 292.2; *see also* § 292.18 (outlining factors applicant must

present, and the Secretary must consider, to assess the detriment to the surrounding community). We hold that IGRA requires the Secretary to weigh and consider the various interests of those within the surrounding community when deciding whether additional off-reservation gaming would be detrimental to the surrounding community. A showing that additional gaming may be detrimental to some members of the surrounding community, including an Indian tribe, does not dictate the outcome of the Secretary's two-step determination.

We are not alone in reaching this conclusion. The D.C. Circuit recently interpreted § 2719(b)(1)(A) in *Stand Up for California! v. U.S. Dep't of Interior*, 879 F.3d 1177 (D.C. Cir. 2018). There, the Picayune Tribe sought injunctive relief to prevent a two-step determination from authorizing another gaming establishment that Picayune anticipated would be harmful to its own gaming operation. *Id.* at 1179, 1186. Similar to Kalispel's position here, Picayune interpreted IGRA's requirement that additional off-reservation gaming "would not be detrimental to the surrounding community" to mean that any resulting detriment to any member of the community precluded the Secretary from making a favorable two-step determination. *Id.* at 1187.

The D.C. Circuit observed that because all new commercial developments are bound to entail some costs to the surrounding community, including nearby businesses, reading IGRA to preclude any new casino that would cause any detriment—in other words, requiring "no unmitigated negative impacts whatsoever"—made no sense if new casinos were ever to be allowed. *Id.* The D.C. Circuit recognized that Congress specifically provided for the authorization of additional off-reservation gaming operations on newly

acquired land and the court observed that "nothing in IGRA . . . forecloses the Department, when making a non-detriment finding, from considering a casino's community benefits, even if those benefits do not directly mitigate a specific cost imposed by the casino." *Id.* Because the regulations "expressly allow [the Secretary] to consider '*any* . . . information that may provide a basis for a . . . determination whether the proposed gaming establishment would or would not be detrimental to the surrounding community,'" the court concluded the regulations support the Secretary's interpretation that IGRA permits the Secretary to balance benefits to parts of the surrounding community against the detriments to others. *Id.* (alterations in original) (quoting 25 C.F.R. § 292.18(g); *see also* 25 C.F.R. § 292.21(a) (cataloguing the information the Department is to consider). We agree with the D.C. Circuit and reject Kalispel's argument that any detriment to Kalispel precluded the Secretary from issuing a favorable two-part determination.**[3]**

**B**

Kalispel also argues that the Secretary's two-step determination was both *ultra vires* and arbitrary and capricious because the Secretary did not properly evaluate the detriment Kalispel would suffer if the Spokane Tribe was allowed to move forward with its competing casino. We

---

**[3]** We do not foreclose the possibility that the Secretary might determine a gaming establishment would present a net detriment to the surrounding community if a single entity faced sufficiently severe harm. In circumstances not presented here, the resulting hardship to one member of the surrounding community could justify an unfavorable two-step determination. Here, though it was forecast that Kalispel would experience a short term drop in gaming revenue, the Secretary's two-part determination is amply supported by the record.

conclude the Secretary had the authority to issue a two-step determination, and the Secretary's decision to issue a favorable decision here was neither arbitrary nor capricious.

The APA requires reviewing courts to set aside agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The Supreme Court explained "[an official] may be said to act *ultra vires* only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (quoting *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697 (1982)). Thus, "an *ultra vires* claim rests on 'the officer's lack of delegated power. A claim of error in the exercise of that power is . . . not sufficient.'" *Id.* (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 690 (1949)).[4]

Congress expressly authorized the Secretary to issue two-part determinations pursuant to § 2719(b)(1)(A). Though Kalispel briefly asserts the Secretary's two-part determination was *ultra vires*, the substance of its argument is that the Secretary improperly exercised the authority Congress delegated by failing to consider the factors required by IGRA. Accordingly, this argument is most properly considered not as an *ultra vires* challenge but as a challenge to the Secretary's exercise of authority as arbitrary and capricious under the APA.

---

[4] Kalispel's argument that the Secretary's determination was *ultra vires* was not raised in the district court. We consider it here, briefly, because Kalispel's *ultra vires* argument on appeal is intertwined with its argument that the Secretary's two-part determination was arbitrary and capricious.

"Agency action is arbitrary and capricious when the agency relies on factors Congress has not intended it to consider, fails to consider an important aspect of the problem, or offers an explanation that runs counter to the evidence before the agency." *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1250 (9th Cir. 2013) (citing *State Farm*, 463 U.S. at 43). "[W]e are to conduct a 'particularly deferential review' of an 'agency's predictive judgments about areas that are within the agency's field of discretion and expertise . . . as long as they are reasonable.'" *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008), *overruled in part on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (ellipsis in original) (quoting *EarthLink, Inc. v. FCC*, 462 F.3d 1, 12 (D.C. Cir. 2006)). Where the allegation is that the agency's decision was arbitrary and capricious, we review the record carefully to ensure that the agency conducted a reasonable evaluation of the relevant factors and reasonably interpreted the governing statute. *See id.*

Kalispel contends that the Secretary failed to consider or underestimated the economic detriment Kalispel would suffer if the Spokane Tribe opened a competing gaming establishment. The Secretary's final determination was based on the entire administrative record, including the Spokane Tribe's application and supporting documents, the final EIS, the consultation process, and submissions from the Kalispel Tribe and other local governmental entities. The Secretary was not persuaded by Kalispel's estimate of its future revenue loss, but the studies commissioned by the Secretary also concluded that Kalispel would sustain a loss in gaming revenue if the Spokane Tribe opened a gaming establishment within a few miles of Northern Quest. The Secretary projected that, in the short term, Kalispel's 2020 revenue

would be 33 percent lower and the Secretary acknowledged that Kalispel's reduced revenue might force Kalispel to reduce or eliminate PCEPs to its members. But the Secretary further estimated that, assuming Kalispel eliminated PCEPs altogether, the reduction in Kalispel's remaining 2020 governmental budget would be 16.7 percent, a much smaller reduction than Kalispel had forecast. Further, the studies indicated that these economic impacts would dissipate over time due to market growth. Relying on the studies' projections, the Secretary concluded that the Spokane Tribe's proposed casino would not be detrimental to the surrounding community within the meaning of § 2719(b)(1)(A).

Despite the Secretary's express acknowledgment of the likely economic harm Kalispel faced, Kalispel contends the Secretary "implicitly dismissed that detrimental impact as not cognizable." In support of this argument, Kalispel cites the Secretary's assertions that Kalispel's governmental budget was "not expected to be considerably reduced when compared to existing conditions," that the reductions "would not prohibit the Kalispel tribal government from providing essential services and facilities to its membership," and that Kalispel "would have 14 times more revenue available per tribal member for the provision of tribal government services and programs as is currently available to the Spokane Tribe."

These statements do not show that the Secretary failed to consider the economic consequences to Kalispel when the Secretary made the two-step determination. IGRA's implementing regulations required the Secretary to undertake a complex, multi-factor analysis to assess the potential harms and benefits of an off-reservation gaming operation, and Congress mandated that the Secretary make that assessment in light of the impacts to the surrounding community as a

whole.   *See* 25 U.S.C. § 2719(b)(1)(A); 25 C.F.R. § 292.21(a).  As demonstrated by the Secretary's lengthy and detailed analysis, the task of weighing the various environmental, social, and economic impacts of a new gaming operation is daunting, but Congress delegated it to the Secretary.[5]    The statements Kalispel selects from the Secretarial Determination merely contextualize what the loss in gaming revenue would mean for Kalispel and its members in practical terms, as part of the Secretary's larger analysis.

Kalispel also argues that the Secretary violated the APA by improperly comparing the detriments to Kalispel against the benefits to the Spokane Tribe.  The administrative record does not support this contention.  Instead, the Secretarial Determination concluded that allowing the Spokane Tribe to host off-reservation gaming would "provide economic growth that [would] have a positive impact on the surrounding community by creating much-needed job opportunities," and "stimulate the existing local tourist industry and benefit the local businesses and economy by creating an influx of non-resident consumers."  As explained, the record contained projections of over $300 million in economic output and over 2,200 jobs in construction, and almost $250 million in annual output, supporting approximately 2,900 long-term jobs and creating millions of dollars in tax revenue.  The Secretary's determination clearly acknowledged that competition would harm Kalispel's gaming revenue in the first year of the new casino's operation.  Nevertheless, the Secretary did not violate the APA by considering the significant economic benefits to the broader community when determining that the

---

[5] The Secretarial Determination was 67 pages long and incorporated the findings of the final EIS by reference.

Spokane Tribe's off-reservation gaming operation would not be detrimental.

Kalispel also contends that the Secretary's decision was arbitrary and capricious because it was based on implausible explanations that were inconsistent with the record. In support of this argument, Kalispel points to two studies it commissioned that projected Kalispel would incur extended and significant monetary losses. The degree of deference afforded to the Secretary defeats this argument. The Secretary considered Kalispel's studies, commissioned studies in response, and concluded Kalispel's lost gaming revenue would not be as high as Kalispel projected and would dissipate over time. The Secretary also found that significant benefits would inure to the Spokane Tribe and other members of the surrounding community. Our review is limited to whether the agency's predictive judgment is reasonable given the administrative record. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 602 (9th Cir. 2018) (observing "the arbitrary and capricious standard is particularly deferential in matters implicating predictive judgments" (alteration and internal quotation marks omitted) (quoting *Stand Up for California!*, 879 F.3d at 1188)). We see no basis to conclude that the Secretary's reliance on the responsive studies or projections concerning the impacts to the surrounding community violated the APA.

We agree with Kalispel that lost gaming revenue, discontinued or diminished PCEPs, and a smaller tribal governmental budget are real and cognizable detriments. But the administrative record does not support Kalispel's contention that the Secretary failed to consider these negative impacts to Kalispel in making the two-step determination. The district court correctly ruled that Kalispel did not meet its

burden of showing that the Secretarial Determination was arbitrary and capricious.

## C

Kalispel also contends that the Secretary previously announced a policy that additional off-reservation gaming would not be approved if a nearby Indian tribe could show that additional gaming would be detrimental to it.  This argument was not advanced in the district court.  Absent circumstances not present here, we do not consider arguments raised for the first time on appeal.  *See Raich v. Gonzales*, 500 F.3d 850,  868 (9th Cir. 2007).  Kalispel argues that it preserved this argument in one paragraph of its motion for summary judgment.   We read the record differently. Kalispel's motion observed that the Secretary stated on two occasions that it would not "approve a tribal application for off-reservation gaming where a nearby Indian tribe demonstrates that it is likely to suffer a detrimental impact as a result."   But Kalispel did not argue that these prior statements amounted to binding agency policy, as it does on appeal, nor did it suggest in the district court that the Secretary's decision violated the APA by departing from earlier statements.  By presenting this argument for the first time on appeal, Kalispel deprives its opponents of the opportunity to explain the context in which these statements appeared, and we are deprived of the benefit of the district court's consideration of this issue.  We do not reach the merits of this argument because Kalispel did not preserve it.

**D**

Kalispel's final argument is that the Secretary breached the federal government's trust duty by not affording Kalispel's interests special weight when it made the two-step determination.  The United States owes a trust duty to Indian nations, *see Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 921 (9th Cir. 2008), but this duty is complicated when the federal government deals with two tribes that have competing interests.  In *Nance v. EPA*, 645 F.2d 701 (9th Cir. 1981), we upheld agency action that was anticipated to benefit one tribe, despite another tribe's objections and claims of harm, *see id.* at 710–12.  We observed that the EPA fulfilled its fiduciary obligations by consulting the interested tribe, allowing it a full opportunity to participate in the public hearing process, and "adequately address[ing]" the tribe's interests in its decision.  *Id.*; *see* Cohen's Handbook on Federal Indian Law, § 5.05[3][c] ("[O]nce the agency has considered the impact of its decision on the tribe's interests, there is no breach of trust").

Here, the Secretary undertook a lengthy, reasoned analysis that considered Kalispel's interests and the Spokane Tribe's interests.  The Secretary acknowledged the detriment Kalispel faced but plainly concluded that the benefits to other members of the surrounding community warranted a favorable two-step determination.  Because Kalispel has not shown that the Secretary failed to consider its claimed harms or to comply with the relevant statutes and regulations, it has not shown that the Secretary violated the trust duty owed to Kalispel.  *See Nance*, 645 F.2d at 711–12 (holding that where an agency owed "conflicting fiduciary responsibilities" to two tribes, it satisfied its duty by adequately addressing the tribes' respective interests in its findings); *see also Gros Ventre*

*Tribe v. United States*, 469 F.3d 801, 811 (9th Cir. 2006) (holding that, where tribe sought to impose a duty not required by any statute, the agency fulfilled its duty by complying with general regulations).

The judgment of the district court is **AFFIRMED.**